## H. W. BURTON *vs.* ADMIRAL CHARLES WILKES.

1. The stipulations contained in a contract in these words, viz: "A B contracts with C D to furnish, at Long Creek Furnace, from 500 to 1000 bushels of coal daily at 6½ cents per bushels to be measured at the pit; C D to furnish the timber gratis wherever he may see fit, reserving groves and fruit trees and advance to A B all the money, weekly, necessary to pay off the wood-choppers—coal to be paid for on delivery at the furnace," are dependent, and if, without fault on the part of the owner of the furnace, and without legal excuse the other fails to deliver the quantity of coal agreed to be delivered, the owner of the furnace being sued for the value of coal, &c., furnished, may properly set up such failure by way of counter-claim.

2. In an action based upon such a contract where it appeared that there had been a failure to deliver 500 bushels of coal on any one day and that the defendant had failed to make as much iron, in consequence of such failure, as he otherwise would have done, a charge, which does not allude to the counter-claim, based upon the foregoing facts until attention is called to the omission and which then merely states "that if the plaintiff failed to perform his contract he could not recover and that if defendant failed he could not recover, is erroneous, and especially in this case where there seems to be no controversy as to the plaintiff's claim, and the main point of the controversy is as to the defendant's counter claim.

3. A charge which misses the point of the case and fails to enlighten the jury on the main points in controversy cannot be sustained.

4. A Judge has not a right to hand to the jury a slip of paper containing an abbreviated estimate of plaintiff's claim for damages against the wish of the opposite party.

The cases of *Watson* v. *Davis*, 7 Jones, 178 and *Outlaw* v. *Hurdle and others*, 1 Jones, 150 cited and approved.

This was a civil action tried at Fall Tem 1871, of Lincoln Superior Court, before His Honor Judge Logan and a jury.

The plaintiff in his complaint alleged that he had made a contract with the defendant who was running an iron furnace, in writing in these words, viz :

"Articles of Agreement Between H. W. Burton and Admiral Charles Wilkes.

H. W. Burton contracts with Admiral Charles Wilkes to· furnish, at Long Creek Furnace, from 500 to 1000 bushels of coal, daily, at 6½ cents per bushel, to be measured at the pit.

Admiral Wilkes agrees to furnish the timber gratis, where-ever he may see fit, reserving groves and fruit trees, and advance to H. W. Burton, all the money, weekly, necessary to· pay off the wood-choppers—coal to be paid for on delivery at the furnace.

H. W. BURTON,
CHARLES WILKES.

Nov. 16th, 1869."

And that about the 1st December, 1869, the· defendant fur-- ther agreed, without writing, that plaintiff should take certain wood of defendant's, already cut down, and make coal of it, and that the plaintiff should only receive, for coal made of this wood, five cents per bushel.

That when the written contract above stated was made, the defendant also agreed by word of mouth to take off the plaintiff's hands all the wood that might remain on plaintiff's hands when he ceased "coaling."

That under these several contracts, the plaintiff furnished coal and wood to make coal as charged in an account exhibited with his complaint.

Defendant by his answer, admitted the execution of the written contract, but alleged that the plaintiff had failed to fulfil his part thereof. That plaintiff had not delivered daily 500 bushels of coal on more than three days.

Defendant also admitted the contract of December 1, 1869, but denied the oral contract of Nov. 16, 1869.

Defendant alleged by way of counter-claim that plaintiff had· agreed to furnish daily at laest, 500 bushels of coal, and failed·

to do so, whereby his furnace, which was of capacity sufficient to consume that amount of coal daily, became "banked up," and stopped, and defendant was thereby prevented from manufacturing as much iron as he would otherwise have done, and demanded by reason thereof, damages to the amount of three thousand dollars.

By way of reply to this counter-claim, the plaintiff alleged the 500 bushels of coal was not furnished daily in consequence of the defendant's failure to pay the wood-choppers, or to pay for the coal on delivery.

The case was submitted to the jury with issues.

There was evidence in behalf of the plaintiff, tending to show that after the written contract was signed, defendant agreed that if the furnace stopped, he would pay for the wood left on hand, and that he wanted "coaling" to go on even if the furnace stopped.

It was also in evidence, that the plaintiff stopped "coaling" because he was not advanced money, weekly, to pay the wood-choppers, and that he had not the money to carry on the business—that after the plaintiff quit, he, at the instance of defendant, met the defendant's general business agent, one Alexander, and Alexander "took up" all the wood left on hand, by which is meant that he received it and marked it with a cross as was the custom among choppers, that he also "took up" all the coal made and delivered ; these being the main items in controversy in this action, it was also in evidence, that the plaintiff had not net delivered on any one day, 500 bushels of coal, or averaged that much per day, and that his reason for failing to do so was that he could not employ enough choppers for want of means. It was also in evidence, that it would require about three months in the country to get ready to make coal, in order to furnish as much a 500 bushels of coal daily ; that thirty choppers were necessary, teams to haul, and time to "set" the pits, &c. There was also evidence that after the coaling ceased, the defendant admitted the plaintiff's

H. W. BURTON *v.* ADMIRAL CHARLES WILKES.

claim as set up in this action, and did not set up, any defence thereto, but on the contrary, let a silent partner have pig-iron in satisfaction, which was afterwards given back on an express promise by defendant's general agent to pay the account in full.

It was in evidence on the part of the defendant, that his furnace had two "tuyers," and that it required 500 bushels of coal daily to run both tuyers ; that if both tuyers could have been run, the furnace would have yielded one and a half more tons of iron per day and metal was then worth $30 to $40 per ton ; that about Christmas, 1869, a cog broke in one of the blast-wheels ; that it took ten days to repair it, and in the meantime the furnace was "banked up" to prevent combustion of material and chilling of the furnace ; that after the blast-wheel was repaired there was only 500 bushels of coal on hand, and furnace did not start for eight days. The plaintiff's counsel insisted that the plaintiff was entitled to reasonable time to begin delivering 500 bushels of coal daily, and that the plaintiff was prevented from doing so by the failure of the defendant to advance money to pay wood-choppers before such reasonable time elapsed, and that in the meantime if plaintiff furnished coal and defendant accepted and used it as it was stated on the account, the plaintiff was entitled to recover the value of it, and that defendant could not recover on his counter-claim because of his failure to pay wood-choppers, and because he did not aver readiness and ability, &c. Defendant's counsel insisted that the plaintiff could not recover on the written contract because he had not complied with its provisions ; that unless he had delivered 500 bushels daily he could not recover under the written contract ; that as to the oral contract about the wood, there was a variance between the allegations and the proof, and as to the counter claim that if the plaintiff's failure to deliver the 500 bushels of coal daily, injured plaintiff as stated, he was entitled to recover to the amount of damages thus sustained.

His Honor charged the jury, "that if the plaintiff's contract was not complied with, he could not recover on it, but that the law did not require impossibilities and the plaintiff was entitled to reasonable time to prepare for executing it; that if the plaintiff was prevented, by the defendant's failure on his part, from furnishing the coal as provided for in the contract, he was nevertheless entitled to the value of the articles furnished and received by the defendant; that if after the work ceased any agreement was made for the payment between the parties, then plaintiff was entitled to recover accordingly." His Honthen handed to the jury a slip of paper in these words:

| | |
|---|---:|
| Plaintiff claims balance | $ 57.77 |
| Wood and coal | 560.39 |
| Interest (left with jury) | 64.90 |
| Claims and interest | 683.06 |

To this, defendant excepted. The defendant's counsel then called the attention of His Honor to the circumstance that he had failed to charge upon the counter-claims, whereupon His Honor instructed the jury that "if the plaintiff failed to perform his contract, he could not recover, and if defendant failed he could not recover.

Under these instructions the jury found a verdict for the plaintiff, assessing his damages at $683.06, and from the judgment rendered thereon, the defendant appealed.

*Schenck* and *Bailey* for the plaintiff.

Moved to dismiss the appeal because it did not appear that the undertaking of appeal had been filed in ten days. The Court it seems began 23d day of October, 1871, and the appeal bond is dated —— day of November 1871, also because there was no justification, another undertaking of ap-

peal was filed December 1st, 1871, which only appears to be justified as to one of the sureties. This motion being denied, they filed a brief which has been mislaid.

*J. II. Wilson* for the defendant.

Boyden, J. In this case the defendant was the owner of a furnace in the county of Gaston, which required five hundred bushels of coal daily, to run it to its full capacity, and the plaintiff agreed to deliver to the defendant daily at his furnace from 500 to 1,000 bushels of coal. The plantifi was to cut the wood on the defendant's land, burn the coal and deliver it, and the defendant was to furnish weekly, money to pay the wood-choppers, and to pay for the coal as it was delivered at the furnace. This contract was made in writing on the 16th day of November 1869. There was no time fixed in this contract when the plaintiff should commence cutting wood or delivering the coal. There was a quantity of wood cut at the time the contract was made, how much does not appear, which the plaintiff was to use in making coal, but the coal made of this wood was to be delivered at a less price than that fixed in the contract. It does not appear that there was any complaint, that the plaintiff did not commence cutting wood and delivering coal in reasonable time; but it does appear in the testimony of the plaintiff himself that on no one day did he deliver the minimum quantity of coal, he had contracted to deliver, and there is evidence tending to show that for lack of the proper quantity of coal, the defendant could use but one of his tuyers; and that by using but one, he could not make as much metal by a ton and a half per day, as he could have made, had the plaintiff furnished the minimum quantity of coal agreed to be delivered daily; and that the metal at the time was worth from thirty to forty dollars per ton.

When the defendant failed to furnish the money weekly to

pay the wood-choppers, or to pay for the coal as delivered does not appear; nor does it appear when the plaintiff complained if ever, before he ceased coaling, that the money was not advanced to pay the wood-choppers and for the coal as delivered.

There is no allegation in the complaint, that the plaintiff ceased his coaling operations, because the defendant failed to furnish weekly, the money to pay the wood-choppers and for the coal as delivered; nor is there any complaint on the part of the defendant that the plaintiff stopped coaling when he did, The commencement of the plaintiff's operations and their stoppage seems to have been by mutual consent of the parties.

But there is an allegation in plaintiff's replication to defendant's counter claim, that defendant is entitled to no damages for the reason that the non delivery of the minimum quantity of coal daily, was caused by the defendant's failure to advance weekly money to pay the wood-choppers, but even in this reply there is no allegation that the coal was not paid for as delivered.

The defendant in his counter claim demands large damages for the non delivery daily of the minimum quantity of coal. There was evidence tending to show that defendant had sustained damage by this failure on the part of the plaintiff.

The stipulations in the contract, we think are dependant stipulations, and the counter-claim is the proper subject of a cross action in this case.

His Honor charged the jury as follows, and this is his entire charge on this complicated case: "That if the plaintiff's contrac, was not complied with, he could not recover on it; but that the law did not require impossibilities, and that plaintiff was entitled to reasonable time to prepare for executing it; that if plaintiff was prevented by defendant's failure on his part from furnishing the coal as provided in the contract, he was nevertheless entitled to the value of the articles delivered, and received by the defendant: that, if after the work ceased, any agreement was made for payment, between

the parties, then the plaintiff was entitled to recover accordingly." This was said without any reference to the counterclaim of defendant. In this we think there was error.

"His Honor then handed to the jury a slip of paper in these words:

| | |
|---|---|
| Plaintiff claims balance, | $ 55.77 |
| Wood and coal, | 560.39 |
| Interest (left with the jury,) | 64.90 |
| Claim and interest, | 683.06 |

Defendant's counsel objected to this paper being handed to the jury.

The defendant's counsel then called the attention of the Court to the fact that he had not charged as to the counterclaim. In reply to this suggestion, His Honor told the jury: "That if the plaintiff failed to perform his contract he could not recover, and if defendant failed he could not recover," and without further remarks the jury retired, and in their verdict for the plaintiff found the exact amount stated in the slip of paper handed to them.

His Honor in his charge to the jury, gave them no instructions as to the main points in controversy; to-wit: whether the defendant was entitled to have his counter claim considered by the jury, and if so what damages was he entitled to, or was he entitled to any damages in his counter-claim because as alleged in plaintiff's replication, his failure was caused by the neglect of the defendant to advance, weekly, the money to pay the wood-choppers. These seem to be the principal points in controversy, there being no allegation that the plaintiff did not commence in reasonable time, or that he did not cease operations by the consent of the defendant.

We think His Honor's charge in regard to reasonable time was well calculated to mis-lead the jury, when he informed

them that the law did not require impossibilities, and that he was entitled to reasonable time to commence the execution of his contract, as it was as much as to say to the jury, that if plaintiff had contracted to deliver daily from five hundred to one thousand bushels of coal, he would be excused from the delivery, upon the ground that it was impossible for him to do so.

We think His Honor was also in error in delivering exhibit E. to the jury. *Watson* v. *Davis,* 7 Jones, 178, and *Outlaw* v. *Hurdle and others,* 1 Jones, 150.

There is error. Let this be certified.

PER CURIAM. *Venire de novo.*