STATE OF NORTH CAROLINA v. DANNY McVAY
— AND —
STATE OF NORTH CAROLINA v. WOODROW SIMMONS

No. 22

(Filed 13 October 1971)

1. Criminal Law § 66— in-court identification of defendant — competency — observations during crime

A robbery victim's in-court identification of the defendants as the perpetrators of the robbery was competent where the identification was based solely on the victim's observation of the defendants during the robbery, which lasted approximately 30 minutes and which occurred under circumstances in which the victim saw the defendants' faces 90% of the time.

2. **Criminal Law § 128— mistrial — newspaper account of the trial — harmless effect on jury**

   Defendants in an armed robbery prosecution were not entitled to mistrial on the ground that, during the trial, an afternoon newspaper published an account of the trial together with the caption, "2 convicts land back in court," and a statement that the defendants were serving sentences for another armed robbery, especially where the defendants introduced no evidence that any of the jurors had read or heard about the article.

3. **Criminal Law § 122— additional instructions after retirement of jury — harmless error**

   Trial court's instruction that the jury had at least three more days to deliberate on the case, which instruction was given when the jury announced an impasse after one hour and twenty minutes of deliberation, was not prejudicial to the defendants on the ground that the instruction had a coercive effect on the jurors, since the court also instructed the jury that each juror was a keeper of his own conscience and that the court would not have a juror do violence to it.

APPEAL by defendants from *McLean, J.*, 4 January 1971 Schedule "A" Criminal Session of MECKLENBURG Superior Court.

Defendants Danny McVay and Woodrow Simmons were charged in separate bills of indictment with the armed robbery of Larry Jeff Joines. The cases were consolidated for trial.

The evidence for the State tends to show that about 11 p.m. on 4 March 1970 as Larry Jeff Joines was leaving the Melody Club located on Tryon Street in Charlotte, North Carolina, he was grabbed by two men, later identified as defendants McVay and Simmons, and pulled back toward an alley. One of the defendants stuck a small caliber, silver-plated, pearl-handle pistol in Joines' side and told him that this was a robbery and that they were going to blow his brains out. Defendants then took all of Joines' money (about $200), his wrist watch, and wedding band. One of them asked him if he had a car. When he said "no," he was accused of lying. Joines then identified a Pontiac parked in the lot as his, and one of the defendants got in the driver's side, Joines was put in the passenger side, and the other defendant got in the back seat. The men attempted to start the car, but it would not start. This seemed to upset defendants, and they made Joines take his clothes off. Defendants again tried to start the car, but when it failed to start they pulled Joines out of the car back towards the alleyway. About this time two men came out of the Melody Club, and Joines ran.

The area outside the Melody Club was a private parking lot and well lighted. While the men were in the car, the inside lights of the car were on. Joines was with the defendants for about 30 minutes and was able to see their faces for about 90% of this time. Joines was later shown a number of photographs by the police officers but no photographs of defendants were included. Joines did not recognize any of the photographs shown him. Later Joines was taken to the hospital to identify McVay, one of the defendants, but he was unable to do so because McVay's face was completely covered with bandages as the result of injuries he had received in an automobile wreck which occurred after the robbery. Joines first saw the defendants after the robbery at the preliminary hearing, at which time he identified them. He again identified them at the trial.

Defendants did not offer testimony.

From verdicts of guilty as to each defendant and sentences imposed, defendants appealed to the Court of Appeals. The cases were transferred to this Court by virtue of the transferral order of 31 July 1970.

*Attorney General Robert Morgan and Assistant Attorney General Millard R. Rich, Jr., for the State.*

*W. Herbert Brown, Jr., for defendant McVay, appellant.*

*James J. Caldwell for defendant Simmons, appellant.*

MOORE, Justice.

[1]  Each defendant excepted to and assigned as error the admission over his objection of the in-court identification by Joines of defendants as the men who robbed him. When Joines' identification testimony was proffered, each defendant objected and the jury was excused. In the absence of the jury a *voir dire* hearing was conducted. The evidence offered consisted of the testimony of Joines; Dale M. Travis, a member of the Criminal Investigation Bureau of the Charlotte Police Department; and the defendants. At the conclusion of the *voir dire* hearing, Judge McLean made the following findings of fact:

"As to the Defendant Danny McVay, the Court finds the following facts: to wit, that Larry J. Joines, upon this evidence, was robbed on the 4th day of March, 1970, in

the vicinity of the Melody Club on Tryon Street in Charlotte, North Carolina, about 10:30 o'clock P.M.; that thereafter the Defendant Danny McVay was in an automobile accident and about the 12th day of March was in the Charlotte Memorial Hospital being treated for injuries received in the automobile accident; that the State's witness, Larry J. Joines, was taken to the hospital to view the Defendant McVay but due to the bandages about his face and the state of his treatment, was unable to make any identification; that later on at the preliminary hearing and on his evidence today, he identified the Defendant for the first time at the preliminary hearing for this cause.

"Upon the foregoing the Court finds that the identification of the Defendant McVay is not tainted by any suggestion of any police officer or otherwise at the time of his identification of the Defendant at the preliminary hearing or upon this hearing, but is based solely upon his recognition of the Defendant as one of the parties that robbed him on the night of the 4th day of March, 1970, and his viewing the Defendant at that time.

"Upon the foregoing the Court holds that the evidence of the witness Joines is competent and admissible in evidence. The objection is overruled. The Defendant excepts.

"As to the Defendant Woodrow Simmons, the Court finds the following facts, to wit: That the witness Joines did not at any time see the Defendant Simmons at the Police Station or view him through any window or see his picture or was presented his picture; that no suggestion as to the identification of Simmons has been made to Joines by any police officer or otherwise; that the identification of the Defendant Simmons is not tainted by any pre-suggestion of the police officers or otherwise and that the identification of the Defendant Simmons by Joines was made solely and exclusively upon his identification of the party being the one that—as being one of the parties who robbed him on the 4th day of March, 1970.

"Upon the foregoing the objection is overruled and the evidence is held competent and admissible, to which the Defendant Simmons objects and excepts."

On the *voir dire* hearing the testimony of both Joines and Travis tends to show that there was no corporeal lineup or confrontation, and that the photographs shown Joines did not include any photograph of either defendant. The testimony of both these witnesses also tends to show that Joines was taken to the hospital for the purpose of identifying McVay but that due to the bandages on McVay's face he was unable to do so. The testimony of defendant Simmons tends to show that he was viewed by Joines at police headquarters. Both Joines and Travis denied this.

There was competent, clear, and convincing evidence to support the court's positive finding that the in-court identification of the defendant McVay and the in-court identification of the defendant Simmons by witness Joines was each of independent origin, based solely on what he saw at the time of the robbery, and did not result from any out-of-court confrontation or from any photograph or from any pretrial identification procedure suggestive and conducive to mistaken identification. Such findings when supported by competent evidence are conclusive on appellate courts, both State and Federal. *State v. McVay* and *State v. Simmons*, 277 N.C. 410, 177 S.E. 2d 874 (1970); *State v. Blackwell*, 276 N.C. 714, 174 S.E. 2d 534 (1970). The assignments of error as to the admission of the in-court identification of defendants by Joines are overruled.

[2] The trial of these cases commenced 11 January 1971 and continued through 13 January 1971. On 11 January 1971 an article appeared in the Charlotte News, an afternoon paper of general circulation, with the caption. "2 convicts land back in court." The article then stated that these two defendants, McVay and Simmons, were on trial for the robbery of Larry Joines, and that these same defendants had been convicted last summer for robbing a couple in a parking lot and were serving 15 to 20 years in prison for armed robbery. After this article appeared, defendants, in the absence of the jury, made a motion for mistrial on the basis of the prejudicial matter contained in the article. Defendants contended that this newspaper was available to the jurors that afternoon and night and placed the character of each defendant in evidence without their taking the stand.

"As a general rule, the allowance or refusal of a motion for mistrial in a criminal case less than capital rests largely

in the discretion of the trial court." 3 Strong, N. C. Index 2d, Criminal Law § 128, p. 49, and cases therein cited. There is no evidence in this record that any of the jurors had read or heard about the article in question or that defendants were in any manner prejudiced by it. Better practice would have been for the court to inquire of the jurors to see if any of them had read or heard about the article in question, and if so, had been in any manner influenced by it. However, in the absence of any showing of prejudice, no abuse of discretion is shown. Error will not be presumed. *State v. Partlow,* 272 N.C. 60, 157 S.E. 2d 688 (1967) ; *State v. Shepherd,* 230 N.C. 605, 55 S.E. 2d 79 (1949) ; 3 Strong, N. C. Index 2d, Criminal Law § 167, p. 127.

[3] After the jury had deliberated for one hour and twenty minutes, the jury returned into open court and the following transpired:

"COURT: Members of the jury, I will answer any question you may ask pertaining to the law, but the evidence is a matter for you to decide. Now, what is the question?

"FOREMAN: YOUR HONOR, we have reached an impasse. Shall we continue?

"COURT: Yes, Mr. Juror. As I understand what you mean by reaching an impasse is that you have been up to this point unable to agree. Is that correct?

"FOREMAN: Correct.

"COURT: Members of the jury, you may reconcile any differences you have under the evidence and render a verdict. The Court will express the hope that you will do so. If this jury fails to render a verdict, it would then become necessary to call upon another jury to pass upon the cases. I have no reason to believe that another would have more intelligence and be better qualified than this jury to make the decisions. Even so, the Court would have the jury bear in mind that each person is a keeper of his own conscience and the Court would not have a juror to do violence to his own conscience nor [in order] to render verdict. However, we have until Friday night for you to work on this case and no reason to hurry the matter. So take your time and deliberate further, please. Please retire."

Defendants contend that this additional statement or instruction to the jury by the court had a coercive effect on the members of the jury and reasonably caused some of them to sacrifice their convictions in order to reach a unanimous verdict.

Defendants concede that in *State v. Barnes,* 243 N.C. 174, 90 S.E. 2d 321 (1955), this Court held no error in an almost identical instruction. See also *State v. Lefevers,* 216 N.C. 494, 5 S.E. 2d 552 (1939). However, defendants contend that by adding this statement, " . . . we have until Friday night for you to work on this case and no reason to hurry the matter. So take your time and deliberate further, please. Please retire," the court conveyed to the jury the impression that the court intended to keep the jury deliberating for at least three more days and possibly longer unless they yielded their convictions about the case and arrived at a unanimous verdict. As stated in *State v. Roberts,* 270 N.C. 449, 154 S.E. 2d 536, 537 (1967), quoting from *Trantham v. Furniture Co.,* 194 N.C. 615, 140 S.E. 300 (1927) : "The trial judges have no right to coerce verdicts or in any manner, either directly or indirectly, intimidate a jury." In *Roberts* a new trial was granted because "the challenged instruction might reasonably be construed by the member of the jury unwilling to find the defendant guilty as charged as coercive, suggesting to him that he should surrender his well-founded convictions conscientiously held or his own free will and judgment in deference to the views of the majority and concur in what is really a majority verdict rather than a unanimous verdict." 270 N.C. at 451, 154 S.E. 2d at 537. In the present case the trial court corrected the error complained of in *Roberts* by stating that "the Court would have the jury bear in mind that each person is a keeper of his own conscience and the Court would not have a juror to do violence to his own conscience."

This is said in 3 Strong, N. C. Index 2d, Criminal Law § 122, p. 34 (citing cases) :

> "Generally, where the jury have retired but are unable to reach a verdict, the court may call the jury back and instruct them as to their duty to make a diligent effort to arrive at a verdict, so long as the court's language in no way tends to coerce or in any way intimate any opinion of the court as to what the verdict should be. Thus, the court may properly instruct the jury that the trial of the cause

involved heavy expense to the county and that it was the duty of the jury to continue its deliberations and attempt to reach an agreement, but that the court was not attempting to force an agreement."

The additional statement that the jury had until Friday to work on the case was given simply to assure the jury that they need not rush their deliberations and that they had ample time in which to consider their verdict. In *State v. McKissick*, 268 N.C. 411, 413-14, 150 S.E. 2d 767, 769-70 (1966), Chief Justice Parker said for the Court:

> "In *S. v. Green*, 246 N.C. 717, 100 S.E. 2d 52, the Court found no error in the following charge to a jury which had been out for some time without arriving at a verdict (We have copied the quoted part of the charge from the case on appeal on file in the office of the clerk of this Court.) :
>
> " '. . . I might say there is not any reason to hurry in the case. This is a two weeks term, and you have until Saturday night. You don't have to hurry, but suppose you go out and try it again, and don't give up too soon.' "

We hold that the statement made by the court to the jury in the instant case was without error.

We find no reason to disturb the result of the trial.

No error.