STATE OF NORTH CAROLINA v. ROBERT DOUGLAS BROWN
AND MARION HAMILTON

No. 19

(Filed 15 March 1972)

1. Criminal Law § 66— in-court identification — pretrial lineup — independent origin

   In this prosecution for kidnapping and rape, the trial court did not err in the admission of the victims' in-court identifications of defendants, where the court found upon competent, clear and convincing evidence presented on voir dire that defendants were represented by counsel at pretrial lineups and that the lineups were fairly conducted, and that the in-court identifications were of independent origin from the pretrial identifications.

2. Criminal Law § 66— representation by counsel at lineups — statements by defense counsel

   The trial court properly found that defendants were represented by counsel at pretrial lineups where the attorney for one defendant stated to the court that he had conferred with defendants prior to the lineups and was present and represented defendants at the lineups, a police officer testified that the attorney was present during the lineups, and defendants did not deny the statements made by the attorney or ask that they be allowed to question him or offer evidence to the contrary.

3. Criminal Law § 66— testimony that defendant resembled assailant — admissibility

   Although a kidnap and rape victim testified that she could not positively identify one of the defendants, the trial court properly allowed the victim to testify that the defendant looked very much like the shorter person who kidnapped and raped her, the victim's lack of positiveness affecting only the weight and not the admissibility of her testimony.

4. Criminal Law § 42— article found five days after crime — remoteness

   In this kidnapping and rape prosecution, testimony relating to an unfired .22 cartridge found at the scene of the crimes five days after the crimes were committed was not incompetent on the ground of remoteness, since the lapse of five days did not affect the competency of the evidence but only its probative value.

5. Criminal Law § 45— experimental evidence

   Experimental evidence is competent when the experiment is carried out under circumstances substantially similar to those existing at the time of the occurrence in question and tends to shed light on it.

State v. Brown

6. **Criminal Law § 45— experimental evidence — visibility at crime scene**

The trial court did not err in allowing a State's witness to testify as to lighting conditions and visibility at the crime scene based on a visit to the scene three days after the crime occurred, where the witness testified that he visited the crime scene at approximately the same time of night that the crime allegedly occurred, and that there was a low overcast on both nights.

7. **Kidnapping § 1; Rape § 5— sufficiency of State's evidence**

The State's evidence was sufficient for the jury in this prosecution of two defendants for the kidnapping and rape of the prosecutrix and the kidnapping of her male companion.

8. **Criminal Law §§ 113, 168 —instructions — immaterial misstatement of fact**

Misstatement of fact made by the court in its charge that a State's witness had testified that one defendant had in his possession on the night of the crimes the rifle which had been introduced as State's Exhibit No. 1, when in fact the rifle had not been introduced at the time the witness testified but was thereafter introduced, *held* an immaterial misstatement which was not prejudicial to defendant.

9. **Criminal Law § 122— instructions urging jury to reach a verdict — statement that all available evidence has been introduced**

Where the jury foreman in a kidnapping and rape prosecution announced after the jury had deliberated for two hours that it had not agreed upon a verdict, statement made by the trial court, while instructing the jury on its duty to make a sincere effort to reach a verdict, that "Insofar as I know, all of the evidence that is available has been presented for your consideration," *held* not to constitute an expression of opinion in violation of G.S. 1-180, since the court was merely stating that it knew of no other evidence which would come up in a new trial, and that based upon the evidence it was the duty of the jury, if possible, to reach a verdict.

DEFENDANTS appeal from *Thornburg, J.,* at the August 1971 Criminal Session of GASTON Superior Court.

Defendants were charged in separate bills of indictment with kidnapping Douglas Eugene Picklesimer and kidnapping and raping Patsy Dean Phillips. The cases were consolidated for trial, and the defendants entered pleas of not guilty. Both defendants were found guilty on the kidnapping charges and on the charge of rape. The jury recommended life imprisonment as to each defendant on the rape charge. The court imposed life sentences on each defendant for the kidnapping offenses and life sentences for the rape. From these sentences, each defendant appeals.

The evidence for the State tends to show that about 10:30 p.m. on 12 February 1971 Douglas Picklesimer and Patsy Phillips were parked in an automobile on Plastics Drive in the city of Gastonia, North Carolina. After they had been there for a short time, two Negro males, one short and one tall, came to the car, ordered them at gunpoint to get out of the car and go to an old abandoned house. On the way to the house the taller of the assailants made Picklesimer hand him his wallet, his cigarette lighter, chapstick, and some pocket change. Picklesimer and Miss Phillips were then ordered to enter the house. Once inside, the shorter assailant handed the rifle to the taller one. Picklesimer, in an attempt to wrestle it away from him, grabbed the barrel. This man jerked the rifle away, stepped back into the hallway, and ejected a shell from the chamber but did not fire. Miss Phillips was then forced against her will to engage in sexual intercourse with each defendant. These acts took place on an old mattress in a room in the abandoned house. While one assailant was having intercourse with Miss Phillips, the other held the rifle on Picklesimer.

After finishing these acts of intercourse, both assailants fled. Picklesimer and Miss Phillips then drove first to the Phillips' home and from there to the hospital. Dr. Robert Groves examined Miss Phillips at 2:30 a.m. on 13 February 1971 and found that she had bruises on her left leg and forehead. Based on a thorough pelvic examination, the finding of a tear or laceration of the back wall of the vagina, and the presence of active sperm on a vaginal smear test, Dr. Groves concluded that there had been penetration, with some significant loss of blood, and that this had occurred not more than seven hours before the examination. Dr. Groves further concluded that prior to this time Miss Phillips was physically virginal.

Later that same day a search was conducted in and around the old house, and the police found Picklesimer's lighter and chapstick, as well as one unspent .22 caliber cartridge. Inside the house, in the room in which the rape allegedly occurred, the police found an old mattress with blood stains on it.

On 14 February 1971 B. V. Posey and M. A. Carswell of the Gastonia Police Department's Detective Bureau, acting on information they had received, went to the home of defendant Brown. Officer Posey explained to Brown that he was under suspicion in a rape case and asked if he could search the house

State v. Brown

for a rifle. The officers did not have a search warrant, but they did advise the defendant of his rights and the defendant signed a typewritten consent to search. The officers searched the house but did not find the gun; defendant then told them that it was probably at his girl friend's house. The officers and defendant Brown drove to her house. She told them that she thought the gun was in the attic of the defendant's house. Officer Posey and the defendant drove back to defendant's house, and defendant climbed into the attic, found the rifle, and gave it to Officer Posey.

The testimony of Mrs. Minnie Pitts tends to show that the defendants lived together in a house about one block from her, that on 12 February 1971 defendants visited her about 9:00 p.m. and left about 10:30 p.m., that defendants had been drinking, and that defendant Brown had a .22 caliber rifle with him at the time. Truitt Lazenby testified that he is a pawnbroker, that defendant Brown pawnêd a .22 caliber rifle with him in December 1970 and redeemed this rifle on 12 February 1971, and this was the same rifle identified as State's Exhibit No. 1. On 17 February 1971 a second unspent .22 caliber cartridge was found by Officer Posey near the door to the room in the old house where the mattress was found and where the rapes were alleged to have occurred. According to the expert testimony of E. B. Pierce, an agent of the State Bureau of Investigation, this unspent cartridge had been ejected from State's Exhibit No. 1, the rifle given by defendant Brown to Officer Posey.

On 15 February 1971 Picklesimer identified defendant Brown in a lineup, and on 17 February 1971 Picklesimer identified defendant Hamilton while he was sitting in a Gaston County courtroom as a spectator. Defendant Hamilton was also identified by Patsy Phillips in a lineup on 19 February 1971. Additional facts concerning these lineups will be stated in the opinion.

The court conducted lengthy *voir dires* and concluded that both lineups were fairly conducted, that at all times during the lineups defendants were represented by counsel, and that the viewing of defendant Hamilton in the courtroom by Picklesimer on February 17 was not impermissibly suggestive.

The trial court conducted extensive *voir dires* to determine if Douglas Picklesimer and Patsy Phillips had ample oppor-

tunity and sufficient light to identify their assailants on the night in question. The court heard the testimony of several witnesses regarding the illumination provided by the interior light in the car that Picklesimer was driving, floodlights on a nearby factory and service station, and railroad warning lights that were flashing near the place where the car was parked. Based on this evidence the court found as a fact and concluded as a matter of law that there was sufficient light for the two victims to identify their assailants, that Picklesimer and Phillips had ample opportunity to view their assailants, and that their in-court identification was based on their encounter with the defendants on 12 February 1971 and was independent of the lineup identifications.

The defendants offered no evidence.

*Attorney General Robert Morgan and Assistant Attorney General Howard P. Satisky for the State.*

*H. L. Fowler, Jr., for defendant appellants.*

MOORE, Justice.

Defendants first assign as error the trial court's finding that the in-court identification of the defendants by the witness Picklesimer was of independent origin and properly admissible.

The witness Picklesimer identified defendant Brown at a lineup on 15 February 1971. Defendant Brown, with seven other Negro males, was in the lineup. At the time Brown was represented by Joseph George Brown, attorney, who was present and advised Brown during the lineup procedure. When Picklesimer was asked to identify Brown at the trial, defendant objected. Judge Thornburg then held a lengthy *voir dire* to determine the admissibility of defendant's identification. After the *voir dire,* Judge Thornburg made findings of fact and conclusions of law, concluding, among other things, that the witness Picklesimer's in-court identification of defendant Brown was of independent origin not tainted by any lineup or suggestive statement of anyone and that his identification had its origin in the ample opportunity which the witness had to observe Brown at the time and place the alleged offenses occurred. On *voir dire* it was also found by Judge Thornburg that defendant Hamilton was identified by Picklesimer at a time when

Hamilton, not in custody, was seated in a local courtroom with some forty other persons, and that at no time did anyone, law-enforcement officers or otherwise, suggest to the witness Picklesimer the identity of defendant Hamilton. There was competent, clear, and convincing evidence to support the court's positive finding that the in-court identification of each defendant was of independent origin based solely on what the identifying witness saw at the time of the crimes, and that the in-court identification did not result from any out-of-court confrontation or pretrial identification procedure suggestive or conducive to mistaken identification. Such findings when supported by competent evidence are conclusive on appellate courts, both State and Federal. *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972); *State v. McVay* and *State v. Simmons,* 279 N.C. 428, 183 S.E. 2d 652 (1971); *State v. Barnes,* 264 N.C. 517, 521, 142 S.E. 2d 344, 346-47 (1965).

Defendant Hamilton next contends that the court erred in permitting the witness Patsy Phillips to identify him at the trial. When Patsy Phillips was asked to identify Hamilton, Hamilton objected and a *voir dire* was held. The court found that a lineup was held on February 19 and that defendant Hamilton was placed in the lineup, together with six other Negro males of substantially similar height, age, and dress, and that at the time Hamilton was represented by Attorney Joseph George Brown. The court further found that the identification of defendant Hamilton was of an independent origin resulting from Patsy Phillips' observation of him over a period of several minutes on the night of the alleged offenses, and that the in-court identification was of independent origin in no way tainted by the lineup. The witness Phillips was then permitted to make an in-court identification of defendant Hamilton. The court's findings were based on competent, clear, and convincing evidence, and such findings are binding on this Court. *State v. Taylor, supra; State v. McVay* and *State v. Simmons, supra; State v. Barnes, supra.*

This Court, in *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969), stated:

> "The rules established for in-custody lineup identification by *United States v. Wade,* 388 U.S. 218, 18 L. ed. 2d 1149, 87 S.Ct. 1926, and *Gilbert v. California,* 388 U.S. 263, 18 L. ed. 2d 1178, 87 S.Ct. 1951 (both decided June 12,

1967), include the constitutional right to the presence of counsel at the lineup and, when counsel is not present, (1) render inadmissible the testimony of witnesses that they had identified the accused at the lineup, and (2) render inadmissible the in-court identification of the accused by a lineup witness unless it is first determined on voir dire that the in-court identification is of independent origin and thus not tainted by the illegal lineup. *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581."

[1] In the case at bar the court found on *voir dire* that defendants were represented by counsel at the lineups and that these lineups were fairly conducted. The court further found that the in-court identifications were of independent origin. Applying the rules stated in *Rogers,* the assignments of error as to the in-court identifications of defendants are without merit.

[2] Defendants further contend that the court erred in allowing Attorney Joseph George Brown to make an unsworn statement that he represented defendants at the lineup on 15 February 1971, and defendant Hamilton further contends the court erred in allowing Attorney Brown to make a similar unsworn statement that he represented Hamilton at the February 19 lineup. From the statements made by Attorney Brown, the court found that Attorney Brown was present and did represent both defendants at the lineup on February 15; that Brown asked for and was given permission to talk with defendants in private before the lineup, which he did; and that Attorney Brown gave defendants advice as to their conduct during the course of and after the lineup. Officer Posey also testified that Attorney Brown was present during the lineup procedures. Defendants did not deny the statements made by the attorney, nor did they ask that they be allowed to question him or to offer evidence to the contrary. In view of these facts, the court properly found that both defendants were represented by counsel at the time of the lineup on February 15, and that Attorney Brown was present and represented defendant Hamilton at the lineup on February 19. This assignment is overruled.

[3] Defendant Brown contends that the court erred in not excluding the testimony of Patsy Phillips that defendant Brown resembles the shorter person who kidnapped and raped her on the occasion in question. Patsy Phillips stated on *voir dire* that she was unable to positively identify the defendant Brown, and

State v. Brown

on direct examination at the trial she was not asked to identify him. On cross-examination she was asked by Brown's attorney if she could identify defendant Brown. She replied: "I can't identify him positively as the person who attacked me. There's some question in my mind as to whether or not he is the man who did that. In good conscience, I can't swear that Robert Douglas Brown to a certainty was the man that attacked me that night. I will have to tell the truth." The solicitor on redirect examination asked the witness if she could identify defendant Hamilton, and she proceeded to do so. The solicitor then asked the following: "You say that you cannot positively identify the shorter subject, but is there any . . . was there any similarity between the one you saw on this particular night of February 12th, and the defendant who is seated behind Mr. Robert Gaines at this particular time, Robert Douglas Brown?" Brown's attorney objected, and the objection was overruled. The witness answered "yes," and then explained her answer by saying: "He resembles him very much but I can't say positively about him like I can about the taller one."

This testimony was competent to show the similarity between the assailant and the defendant. The witness admitted that she could not make a positive identification of the defendant, but she had previously testified without objection as to the size of this defendant, and she kept referring to him as the "shorter subject." It was proper on cross-examination to admit her testimony that the defendant Brown looked very much like one of the men who kidnapped and raped her. Her lack of positiveness affected only the weight, not the admissibility of her testimony. Stansbury, N. C. Evidence § 129 (2d Ed. 1963).

In *State v. Lawrence,* 196 N.C. 562, 146 S.E. 395 (1929), this Court considered testimony as to the identity of defendant as follows:

"(a) 'I know the defendant, and the man in the car looked like him, but I will not say that it was. My impression is that it looked like him.' (b) 'He looked like the defendant. . . . When he came by I thought I recognized him as the man I saw in the coupe on the early morning of 25 March 1928.' (c) 'I think the man in the automobile looked like him, but I will not swear it was him. No, sir, I will not swear so, but I think it was.' "

The Court stated: "This kind of evidence has frequently been held to be admissible in this jurisdiction," citing *State v. Costner,* 127 N.C. 566, 37 S.E. 326 (1900); *State v. Carmon,* 145 N.C. 481, 59 S.E. 657 (1907); *State v. Lane,* 166 N.C. 333, 81 S.E. 620 (1914); *State v. Walton,* 186 N.C. 485, 119 S.E. 886 (1923). This assignment is without merit.

[4] The State was permitted to introduce into evidence two unfired .22 cartridges, one found 13 February 1971 and one found 17 February 1971 at the scene of the crimes, and was further permitted to introduce expert testimony to the effect that the cartridge found on February 17, State's Exhibit No. 18, had been chambered in State's Exhibit No. 1, the rifle identified as belonging to defendant Brown. Picklesimer testified that defendants had a rifle with them during the commission of the crimes. He also testified that as they were entering the room in which the rapes occurred, he wrestled with the defendant Hamilton by grabbing the rifle barrel, and Hamilton pushed him away and ejected a shell from the rifle. Officer Posey of the Gastonia Police Department testified that five days after these crimes he found a cartridge near the door of the bedroom where the rapes took place, and this was the cartridge later identified by the expert as the one having been ejected from Brown's rifle. Defendants contend that the identification of the cartridge found on February 17 should not have been admitted because of remoteness. The five-day lapse occurring between the crimes and the discovery of the cartridge is not a significantly long period. This lapse of time would not render the evidence incompetent, but would only affect the probative force of the evidence. *State v. Payne,* 213 N.C. 719, 197 S.E. 573 (1938); *State v. Macklin,* 210 N.C. 496, 187 S.E. 785 (1936); Stansbury, N. C. Evidence § 118 (2d Ed. 1963); 22A C.J.S. Criminal Law § 712, p. 963 (1961).

[5, 6] Defendants next contend that the court erred in permitting the witness Ralph Phillips to testify as to the visibility at the scene of the crimes. On 15 February 1971 the witness Phillips went to the scene around 10:15 p.m., which was about the same time the crimes were alleged to have occurred. The witness testified that there was a low overcast on the night of the 15th when he was there, as there had been on the night when the crimes occurred. He testified concerning the various lights near the scene of the crimes, and further testified that there

was sufficient light to recognize a person. Experimental evidence is competent when the experiment is carried out under circumstances substantially similar to those existing at the time of the occurrence in question and tends to shed light on it. It is not required that the conditions be precisely similar, the want of exact similarity going to the weight of the evidence with the jury. 2 Strong, N. C. Index 2d, Criminal Law § 45. The determination of competency of such evidence rests largely in the discretion of the trial court. *State v. Hairston* and *State v. Howard* and *State v. McIntyre,* 280 N.C. 220, 185 S.E. 2d 633 (1972) ; *Jenkins v. Hawthorne,* 269 N.C. 672, 153 S.E. 2d 339 (1967) ; 3 Strong, N. C. Index 2d, Evidence § 19, p. 625. Here, no abuse of discretion is shown.

[7] Defendants next contend that the court committed error in overruling defendants' motion for judgment as of nonsuit. This assignment is without merit. There was substantial evidence against defendants of every essential element of the crimes charged. Decision requires consideration of the evidence in the light most favorable to the State. *State v. Allred,* 279 N.C. 398, 183 S.E. 2d 553 (1971), and cases cited.

[8] Defendants contend that the court erred in its charge to the jury by stating that, as the court recalled, the witness Minnie Pitts testified "that the defendant, Brown, had a gun in his possession [on the night of the crimes] which has been introduced in evidence as State's Exhibit No. 1." The witness Minnie Pitts testified without objection that on the night of 12 February 1971 the defendant Brown had a rifle when he first came to her house about 9 p.m., that he left but then came back about 10 p.m., at which time he still had the rifle. Subsequently the court held an examination in the absence of the jury to determine the admissibility of testimony by Minnie Pitts that the rifle defendant Brown brought to her house was the same rifle as the one (later marked State's Exhibit No. 1) the State then had in court, but which had not been introduced into evidence. The court made findings that the witness Minnie Pitts knew this rifle belonged to defendant Brown and "that the .22 caliber rifle was in the possession of the defendant, Brown, at approximately 10:30 p.m. on the night of February 12, 1971." The court then ordered the evidence suppressed until the State proved lawful possession of the rifle. Later in the trial, it was established that on 14 February 1971 defendant

Brown voluntarily delivered a .22 caliber rifle to Officer Posey. This rifle was admitted into evidence without objection as State's Exhibit No. 1 and was identified by Truitt Lazenby, a pawnbroker, as the rifle defendant Brown redeemed from him about 5:30 p.m. on 12 February 1971. The State did not reintroduce the previously suppressed testimony of Minnie Pitts to the effect that State's Exhibit No. 1 was the same rifle that defendant Brown had in her house on the night of 12 February 1971.

The statement that Brown had a rifle in his possession on the night of the crimes and that Brown had given Officer Posey a rifle which was later introduced in evidence as State's Exhibit No. 1 was a correct statement of fact. The misstatement of fact, if any, made by the court in its charge was that Minnie Pitts had testified that the defendant Brown had in his possession the rifle which had been introduced in evidence as State's Exhibit No. 1. Actually at the time Minnie Pitts testified the rifle had not been introduced. At most this was an immaterial misstatement which was not prejudicial to defendant. Ordinarily a misstatement of fact must be brought to the court's attention by counsel for defendant in apt time to afford opportunity for the court to correct it. *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429 (1960), cert. den. 365 U.S. 830, 5 L.Ed. 2d 707, 81 S.Ct. 717 (1961); 3 Strong, N. C. Index 2d, Criminal Law § 163. This assignment is without merit.

[9] Defendants finally contend that the court erred in stating to the jury, "insofar as I know, all of the evidence that is available has been presented for your consideration"—that this was a violation of G.S. 1-180 in that it was an expression of an opinion by the trial court. The record discloses that after the charge of the court the jury retired at 4:45 p.m. to make up its verdict, and that at 6:45 p.m. the jury through its foreman announced that it had not agreed upon a verdict. The jury was then excused to return at 8:25 p.m. When court reconvened at 8:25 p.m., the trial judge stated:

"COURT: Members of the jury, before you return to your deliberations, I want to give you these additional instructions. It is not anticipated under our system of justice that all twelve jurors will enter into a jury room at the end of the court's instructions and be of the same opinion. That is the purpose of having twelve jurors—so that

State v. Brown

they might sit together, deliberate, and consider the opinions of each other and finally arrive at a just verdict. These cases have been well presented by both the State and counsel for the defense.

*"Insofar as I know, all of the evidence that is available has been presented for your consideration.*

"Coming as you do from all parts of the county, of various backgrounds, I am certain that we will at no time in the future be able to obtain a more competent jury to determine these matters that are now before you. Some jury has to decide these cases. I am hopeful that it will be you. You have not deliberated for an excessive period of time and I am not asking any member of the jury to surrender a conscientious opinion that he or she may have concerning what the verdict should be in either of these cases, but I am asking you to make a conscientious effort to arrive at verdicts in these cases—to discuss them, to consider each others opinions, and see if you as a jury cannot return to this courtroom with fair verdicts in the cases. You may retire and continue your deliberations." (Emphasis added.)

This is said in 3 Strong, N. C. Index 2d, Criminal Law § 122, p. 34 (citing cases) :

"Generally, where the jury have retired but are unable to reach a verdict, the court may call the jury back and instruct them as to their duty to make a diligent effort to arrive at a verdict, so long as the court's language in no way tends to coerce or in any way intimate any opinion of the court as to what the verdict should be. Thus, the court may properly instruct the jury that the trial of the cause involved heavy expense to the county and that it was the duty of the jury to continue its deliberations and attempt to reach an agreement, but that the court was not attempting to force an agreement."

The additional statement made by the trial court in the present case that insofar as he knew all available evidence had been introduced was simply a statement that the court knew of no other evidence which would come up in a new trial, and that based upon the evidence it was the duty of the jury, if possible, to reach a verdict. The court was careful to caution the jury

that it was not asking any member of the jury to surrender a conscientious opinion which he or she might have concerning what the verdict should be, but that the court was simply asking them to make a sincere effort to arrive at verdicts in the cases. In this statement there was no error. See *State v. McVay* and *State v. Simmons, supra; State v. McKissick,* 268 N.C. 411, 150 S.E. 2d 767 (1966) ; *State v. Green* 246 N.C. 717, 100 S.E. 2d 52 (1957).

There was ample evidence to carry the cases to the jury and sustain the verdicts. Prejudicial error has not been shown and the judgments must therefore be upheld.

No error.