STATE OF NORTH CAROLINA v. RONNIE FEIMSTER

No. 7422SC394

(Filed 5 June 1974)

1. **Criminal Law § 92— consolidating homicide charges against two defendants**

    The trial court did not abuse its discretion in consolidating for trial homicide cases against two defendants where both defendants were indicted for an offense of the same class arising out of the same killing.

2. **Criminal Law § 128— motion for mistrial — newspaper article concerning another charge**

    The trial court in a homicide case did not err in the denial of defendant's motion for mistrial based on a newspaper article printed during the trial stating that a warrant had been issued charging defendant with assaulting a police officer where the record does not show that any of the jurors read the article or were adversely influenced by it, notwithstanding the court denied the motion without examining the jurors regarding any possible prejudicial effect of the article on them.

3. **Criminal Law § 42— chain possession of exhibits**

    In a prosecution for the murder of a taxicab driver, the State's showing of the chain of possession of spent cartridges found in the cab, bullets removed from deceased and an envelope containing the bullets and the pistol from which they were fired was sufficient to permit the admission of such exhibits, notwithstanding one officer who had had possession of the exhibits was deceased at the time of the trial.

4. **Criminal Law § 42; Homicide § 20— bullets "similar" to those removed from deceased — admissibility**

    The fact that a medical witness was able to state only that bullets presented at trial were "similar" to those he removed from the deceased did not render the bullets inadmissible in evidence.

State v. Feimster

5. **Criminal Law § 89— statements by witnesses to SBI agent — admission for corroboration**

   The trial court properly allowed an SBI agent to read statements given by two State's witnesses for the purpose of corroborating their testimony where inconsistencies between the statements and the testimony of the two witnesses were either not substantial enough to warrant excluding the evidence or were properly excluded by the court when defendant moved to strike.

6. **Criminal Law § 95— conversation with codefendant — admission against defendant**

   The trial court did not err in failing to restrict testimony of a witness's conversation with a codefendant regarding a pistol to the codefendant where the conversation was relevant to the homicide with which defendant was charged.

7. **Criminal Law § 45— experimental evidence — distance cab driven — amount of fare** ·

   In a prosecution for the murder of a taxicab driver, the trial court did not err in permitting an SBI agent to testify that he drove decedent's cab from a point where defendant allegedly entered a cab to the place where the cab containing decedent's body was found and that the fare meter registered the same amount as that shown on the meter when the cab was found.

8. **Criminal Law § 80— dispatch ticket — nonadmitted documents attached — absence of prejudice**

   In a prosecution for the murder of a taxicab driver, defendant was not prejudiced by the fact that when a dispatch ticket was admitted into evidence other documents not introduced into evidence were attached to it where the other documents were removed as soon as this was called to the attention of the court.

APPEAL by defendant from *Collier, Judge,* 15 October 1973 Session of Superior Court held in IREDELL County.

Defendant was tried for murder in the second degree. Evidence for the State tended to show the following.

About 6:00 p.m. on 9 May 1972, defendant and others were together at a residence where Barbara Bruner lived. Illegal drugs were being used. There was a discussion about robbing either Bruner's father, who operated a taxi cab stand, or Creedmore's cab. One of the group, after a short absence, returned and advised against robbing Bruner's father. Shortly after 7:00 p.m., defendant and another left. Defendant returned to the Bruner residence about 1:10 a.m. on 10 May 1972. Defendant said, ". . . he didn't think it was worth it, we didn't get that much money. . . ."

Patricia Redman lived at 522 Tradd Street in Statesville. Redman testified that defendant came to her house shortly before 11:00 p.m. on 9 May. She granted defendant's request that he be allowed to use her telephone. Defendant turned to the yellow pages and then dialed a number. He asked to speak with someone named Pete. He asked Redman for her house number. She told him 523. Defendant "said 525." Before leaving, defendant told Redman not to tell anyone he had used her telephone. Redman saw a Creedmore cab with number 2 on the side stop near 525 Tradd Street across the street from her house. She saw defendant and another person get in the cab and be driven away. When defendant left her house, he was wearing a pair of "shades" but she did not remember what color they were. Creedmore Company records disclosed a call for a cab to go to 523 Tradd Street at 10:41 p.m.

About 11:45 p.m., Pete Sprinkle, a cab driver, was found dead in Creedmore cab number 2. He had been shot in the chest four times. The cab was discovered at the intersection of two rural roads in Iredell County about 1½ miles from where defendant resided with his parents. The cab lights were on and the motor was running. The trip meter showed $3.50 in fare. During his investigation of the murder an officer drove the cab from 523 Tradd Street to where Pete Sprinkle was found in the cab. The meter registered a fare of $3.50 when the officer reached the scene of the crime.

Four spent .25 caliber cartridges and a purple eyeglass lens were found at the scene. Examination of slugs removed from Pete Sprinkle's body and the spent cartridges disclosed that they had been fired from a pistol owned by Vernon Tomlin. Wilford Walls was also charged with the murder of Pete Sprinkle. Walls came to Tomlin's home on the evening of 9 May and asked to borrow his gun. Tomlin kept the gun in his bedroom. He did not "hand" the gun to Walls but went to another room. Later Walls came out and left. Tomlin next saw the gun about 1:00 p.m. the following day. On 11 May 1974, Walls told Tomlin to keep the gun because people were saying that he [Walls] had killed the cab driver. Tomlin did keep the pistol for a few days and then turned it over to the police.

Defendant denied any participation in the crime. He denied being at the home of Barbara Bruner or ever having ridden in a Creedmore cab. He admitted using Patricia Redman's telephone but said he used it to call a friend to take him

home. He said he walked away from Redman's house and later the friend he had called, Michael Feimster, took defendant and Wilford Walls to the home of defendant's parents where they spent the remainder of the night.

Defendant was convicted of murder in the second degree and a prison sentence of from 28 to 30 years was imposed.

*Attorney General Robert Morgan by William Woodward Webb, Associate Attorney, for the State.*

*Collier, Harris, Homesley, Jones & Gaines by Wallace W. Dixon for defendant appellant.*

VAUGHN, Judge.

[1]  Defendant contends that the court erred in consolidating his case with that of Wilford Walls who was also indicted for the homicide of Claude (Pete) Brown Sprinkle. Both defendants were indicted for an offense of the same class arising out of the same killing. Whether to consolidate the cases for trial rested within the court's sound discretion. *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384; G.S. 15-152. The exercise of that discretion will not be disturbed absent a showing of abuse. *State v. Yoes* and *Hale v. State,* 271 N.C. 616, 157 S.E. 2d 386. No such showing has been made in the present case. The cases were properly consolidated. *State v. Spencer,* 239 N.C. 604, 80 S.E. 2d 670.

[2]  Defendant next asserts that the court erred in denying his motion for a mistrial which was based on the fact that a local newspaper printed an article saying that a warrant had been issued for defendant for assaulting a police officer with a deadly weapon. The story allegedly appeared at approximately the same time the court recessed overnight after the jury had been selected but before the presentation of evidence. The court denied defendant's motion without examining the jurors regarding any possible prejudicial effect of the article on them. While our Supreme Court has suggested that it might be better practice to examine each juror on the effect of a potentially prejudicial article, *see State v. McVay* and *State v. Simmons,* 279 N.C. 428, 183 S.E. 2d 652, the court's failure to do so in this case is not prejudicial error since the record does not demonstrate that any of the jurors read the article or that they were adversely influenced by it. *See State v. McVay* and *State v. Simmons, supra.* Whether to grant defendant's motion for a mistrial

involved a discretionary decision which we decline to reverse where abuse has not been shown. *See* 3 Strong, N. C. Index 2d, Criminal Law, § 128, p. 49.

**[3, 4]**   Defendant also contends the court erroneously admitted into evidence four spent cartridges found in the taxi cab, three bullets "similar" to those removed from the deceased, an envelope containing the bullets removed from the deceased and the pistol from which the bullets and cartridges were allegedly fired. Defendant's argument that no connection was shown between the gun and bullets and defendant is without merit. Defendant also argues that the envelope, bullets and casings were inadmissible because there was a break in the chain of possession of the evidence precipitated by the death of Sgt. Tate, one of the officers who investigated the crime. With respect to the cartridges, the evidence suggested the following chain of possession. On the night of 9 May, Captain Michael Courain of the Iredell Sheriff's Department found the casings and put them in an evidence bag under the control of Sgt. L. V. Tate, now deceased. On the morning of 10 May, SBI Agent Richard Lester received four cartridges from Sgt. Tate. Lester placed identifying marks on the cartridges. The casings were then given to Cleon Mauer for ballistics analysis. At trial, Lester positively identified the casings on the basis of the presence of his identifying marks. Mauer identified them from the fact they were still in sealed envelopes marked with his fingerprints. Courain said the cartridges were similar to those he found in the cab. Regarding the bullets removed from the deceased, Dr. Schnell testified he sealed them in an envelope which he signed, dated and labeled with the name of the deceased. He turned the envelope over to Sgt. Tate. Agent Lester received the envelope, apparently still sealed, and put identifying information on the envelope. He put each bullet in a separate box, labeled each box, sealed them and turned them over to Mauer. Mauer put identification marks on the bullets and sealed them in an envelope which was still sealed when offered at trial. We conclude that the chain of possession with respect to the bullets, casings and envelope was sufficiently definite to support the identification of these items. That Dr. Schnell was only able to state that the bullets presented at trial were "similar" to those he removed from the deceased did not render the bullets inadmissible. *See State v. Bass, supra; State v. Jarrett,* 271 N.C. 576, 157 S.E. 2d 4; *State v. Culbertson,* 6 N.C. App. 327, 170 S.E. 2d 125.

[5, 6]  Defendant next maintains that the trial court erred "in allowing the State to go forward in its attempt to impeach its own witness, Vernon Tomlin, and erred by allowing the witness Lester to read the statements of Tomlin and the witness Patricia Redman." The defendant further contends that the trial court "erred in not restricting the offered testimony of Tomlin to the original codefendant Wilford Walls." Sgt. Lester was permitted to testify to the contents of statements given to him by Tomlin and Redman. The purpose of this testimony was not impeachment but rather corroboration. That prior consistent statements not otherwise admissible may be admitted for corroborative purposes is well settled in this jurisdiction. Any inconsistencies between the statements given to Lester and the testimony of Tomlin and Vernon at trial were either not substantial enough to warrant excluding the evidence, *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572; *State v. Thompson,* 8 N.C. App. 313, 174 S.E. 2d 130, or were properly excluded by the court when the defendant moved to strike. Tomlin's conversation with Walls regarding his pistol was relevant to the commission of the homicide with which defendant was charged, and it was unnecessary to restrict the testimony of Tomlin to the codefendant Wilford Walls.

[7]  Defendant objects to the fact that Lester was allowed to describe the results of an experiment involving the cab in which the deceased was found. Lester and another officer drove the cab from 523 S. Tradd Street to the rural intersection where it had been found. Lester stated that the fare meter was set at zero at the Tradd Street address and registered $3.50 upon arrival at the intersection. Lester detailed the route followed. Before allowing this testimony, the court conducted a *voir dire* examination during which Lester stated in effect that he thought the route followed was the shortest direct route, that there was another way to go, that the "differences in the two mileages was not very much," and that he "just assumed we traveled the route [the deceased] took." This assumption appears to be the basis of defendant's objection to the admission of the experimental evidence. The general rule regarding the admissibility of experimental evidence has been stated as follows:

> "Experimental evidence is competent when the experiment is carried out under circumstances substantially similar to those existing at the time of the occurrence in question and tends to shed light on it. It is not required

that the conditions be precisely similar, the want of exact similarity going to the weight of the evidence with the jury."

*State v. Brown,* 280 N.C. 588, 187 S.E. 2d 85. We conclude that the trial judge did not abuse his discretion in determining that Lester's testimony was competent under the above test. *See State v. Hairston* and *State v. Howard* and *State v. McIntyre,* 280 N.C. 220, 185 S.E. 2d 633; *State v. Brown, supra.* In *State v. Plyler,* 153 N.C. 630, 69 S.E. 269, the court held it proper to permit a witness to testify that he had gone from one place to another in a certain length of time.

[8] Defendant assigns error to the fact that when a dispatch ticket was admitted into evidence and exhibited to the jury other documents not introduced in evidence were attached to it. As soon as this was called to the attention of the court the other documents were removed. There is nothing in the record to indicate what the "other documents" were. Defendant has failed to show prejudice, and his contention that the judge should have declared a mistrial is without merit.

We have considered defendant's remaining assignments of error, including his objections to the charge and find no prejudicial error.

No error.

Judges CAMPBELL and MORRIS concur.