STATE OF NORTH CAROLINA v. BOBBY W. GRESHAM

No. 26

(Filed 5 October 1976)

1. Criminal Law § 122— instructions urging jury to agree

It is not error for the trial judge to instruct the jury additionally that the trial of a case involves heavy expense to the county and that it is the duty of the jury to continue its deliberations and to attempt to reach an agreement; nor is it error for the trial judge to instruct that so far as he knows all available evidence is before them for their consideration.

2. Criminal Law § 122— second instruction urging jury to agree — failure to instruct not to surrender convictions

While it is the better practice for a trial judge on each occasion that he urges the jury to agree on a verdict to emphasize in clear and understandable language that no member of the jury should surrender his conscientious convictions in order to reach a verdict, failure of the trial judge to do so when he gave the jury additional instructions for a second time did not constitute prejudicial error where approximately one hour before the second additional instructions were given, the judge had twice told members of the jury that they should reconcile their differences only if they could do so without surrender of their individual conscientious convictions.

DISCRETIONARY review of the decision of the Court of Appeals, 28 N.C. App. 730, 223 S.E. 2d 410, finding no error in the trial before *Judge Perry Martin* at the 26 May 1975 Session, ONSLOW Superior Court.

Defendant was charged with felonious breaking and entering and larceny. The State relied primarily on the testimony of Michael Glass, an alleged accomplice. Glass testified that at about 8:30 p.m. on 22 March 1975, he and several others were

at defendant's residence. Glass, John Harris, and defendant drove to the town of Hubert in defendant's car. Upon finding an apparently unoccupied house, Glass broke a window and obtained entry into the house. The three entered the house and defendant took a 12-gauge shotgun and the others took clothes, jewelry, a camera and a television set. As they left the house, a car pulled into the driveway. Glass and Harris ran around the house and hitchhiked back to defendant's house. They there found defendant with the stolen shotgun. Defendant sawed the barrel off the shotgun on the following day and a police officer later found the barrel of the shotgun in defendant's house.

Defendant testified that he had nothing to do with the theft. He stated that on the night of 22 March 1975, there were several people in his home. He loaned his car to John Harris but at no time did he (defendant) leave the house. Defendant offered several witnesses who corroborated his statement that he had not left the house on the night of 22 March 1975.

The jury returned verdicts of guilty as to each charge. Defendant appealed from judgment imposing a sentence of ten years "as a committed youthful offender."

*Attorney General Edmisten, by Assistant Attorney General Robert G. Webb, for the State.*

*Edward G. Bailey for defendant appellant.*

BRANCH, Justice.

The single question presented by this appeal is whether the trial judge's additional instructions coerced the verdict of the jury.

The jurors returned to the courtroom about one hour after the case had been submitted to them and through their foreman indicated that they had been unable to reach a unanimous verdict and that the numerical division among the jurors was ten to two. At that time, the trial judge charged:

COURT: Be seated, please. Ladies and gentlemen of the jury, I presume that the twelve of you realize what a disagreement means. In the Court's opinion you have not been deliberating for an unreasonable length of time for this case, not over an hour and fifteen minutes at the most. Stating that you have been unable to arrive at a verdict

means, of course, that if this case is not tried, it will be another week of court that will have to be consumed for the trial of this case again. I'm not making an effort to force your or to coerce you in any way to reach a verdict, but it is my duty to tell you that it is the duty of the jurors to try to reconcile their differences and reach a verdict if they can do so without surrender of their conscientious convictions. And, as I originally told you, it is not well for a juror to take an adamant position at the commencement of the deliberations for which they say they will not recede under any circumstances after consulting with the other members of the jury. A jury is a deliberative body.

You have heard the evidence in this case. You have had the benefit of all the evidence and you have heard the arguments and contentions of the attorneys. If this Court is required to declare a mistrial, it will mean that another jury will have to be selected to hear this case and this evidence again and to ultimately decide the very thing that it is your responsibility to decide at this time, if you can do so.

I recognize, of course, that there are times when individual jurors cannot agree. I want to emphasize the fact that it is the duty of the jurors to do whatever they can to resolve their differences as reasonable men and women and to reconcile them to the end that they arrive at the truth as a composite body and to reach a verdict, if you can possibly do so without violence to your individual judgment and conscience.

I remind you again, ladies and gentlemen of the jury, that your decision in this case is not to be based on sympathy, bias or prejudice, but is to be based upon the evidence that you have heard under oath which you believe and the Court's charge as to the law.

You may retire and continue your deliberations.

At 6:30 p.m., approximately one hour later, the court asked that the jury be returned to the courtroom. The jury returned and in response to the court's inquiry the jury foreman indicated that no progress had been made toward reaching a unanimous verdict. After stating to the jurors that so far as he knew they had the benefit of all available evidence and that failure to

reach a verdict would require another trial at added expense to the County, Judge Martin stated:

> I am asking you as a jury of twelve to consider the views of all the members of the jury. I might say to you, ladies and gentlemen of the jury, there is no reason to hurry in this case. Today is only Thursday. You can take as much time as you desire in this matter and deliberate and discuss the case as long as you desire. If you become hungry, we will sit down for food. If you become sleepy, we will rest. I want to emphasize the fact that it is the duty of the jurors to do whatever they can reason the matter all together as reasonable men and women and to reconcile their differences.
>
> Ladies and gentlemen of the jury, I will let you retire and resume your deliberations.

The jury retired and on the same evening returned its verdicts. The record does not reveal the hour at which the verdicts were returned.

[1] This Court has held that it is not error for the trial judge to additionally instruct a jury that the trial of a case involved heavy expense to the County and that it was the duty of the jury to continue its deliberations and to attempt to reach an agreement. *State v. Lefevers,* 216 N.C. 494, 5 S.E. 2d 552. Nor is it error for the trial judge to instruct the jury that so far as he knows all available evidence is before them for their consideration. *State v. Brown,* 280 N.C. 588, 187 S.E. 2d 85, *cert. denied,* 409 U.S. 870, 34 L.Ed. 2d 121, 93 S.Ct. 198. Our Court has also ruled that a statement contained in an additional instruction that "we have until Friday night for you to work on this case and no reason to hurry the matter" was not coercive but was merely an assurance that the jury had ample time to deliberate. *State v. McVay* and *State v. Simmons,* 279 N.C. 428, 183 S.E. 2d 652. The essence of both of Judge Martin's additional instructions was that it was the duty of the jury to reach a verdict and their failure to do so would result in a retrial of the same cause at heavy expense to the County. In his charge, he assured the jury that they had ample time to deliberate. We see nothing in the additional instructions which intimates what verdict the judge thought was proper or deprived the jurors of "that freedom of thought and of action so very essential to a calm, fair and impartial consideration of the case." *State v. Windley,* 178 N.C.

670, 100 S.E. 116. However, defendant contends that the vice in the additional instructions is that Judge Martin in his second additional instruction to the jury failed to instruct that no member of the jury should surrender his conscientious convictions in order to reach a verdict.

We deem it necessary to review authorities which have considered this narrow question.

The landmark case of *Allen v. United States,* 164 U.S. 492, 41 L.Ed. 528, 17 S.Ct. 154, in pertinent part states:

> The seventeenth and eighteenth assignments were taken to instructions given to the jury after the main charge was delivered, and when the jury had returned to the court, apparently for further instructions. These instructions were quite lengthy and were, in substance, that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. . . .
>
> *       *       *
>
> . . . There was no error in these instructions.

Defendant, in part, relies upon the case of *State v. Mc-Kissick,* 268 N.C. 411, 150 S.E. 2d 767, as support for his contention that the verdict of the jury was coerced by the trial judge's instructions. In *McKissick,* the trial judge recalled the

---

**State v. Gresham**

---

jury after it had deliberated for several hours and thereafter instructed as follows:

> "Well, members of the jury, a Judge cannot discharge a jury lightly. You must consider this case until we have exhausted every possibility of an agreement.
>
> "I presume you realize what a disagreement means. It means that this case will have to be retried at further expense.
>
> "I do not want to force or coerce you into agreement and could not if I wished to so do. But still it is your duty as intelligent men and women to consider the evidence, reason the matter over among yourselves and come to an agreement.
>
> "A mistrial is always a misfortune in any case or to any County.
>
> "Jurors, if they cannot render a verdict, are entirely useless.
>
> "It is the duty of jurors, if possible, to render a verdict and I hope you can retire and consider the matter further, reason with each other as intelligent men and women and come to an agreement. You may retire."

The Court, emphasizing the language of the second sentence in the above-quoted instruction, held that the instruction might reasonably be construed by the minority members of the jury as a coercive instruction which suggested that they surrender their conscientious convictions in deference to the views of the majority. In granting a new trial, the Court quoted with approval from 89 C.J.S., Trial, § 481, p. 128, as follows:

> "What amounts to improper coercion of a verdict by a trial court necessarily depends to a great extent on the facts and circumstances of the particular case and cannot be determined by any general or definite rule. . . . In urging the jury to agree on a verdict, the court should emphasize that it is not endeavoring to inject its ideas into the minds of the jurors and that by such instruction the court does not intend that any juror should surrender his own free will and judgment, and these ideas should be couched in language readily understood by the ordinary lay juror." . . .

[2]   We have consistently followed the rule set forth in *Allen* and *McKissick. State v. Accor* and *State v. Moore,* 281 N.C. 287, 188 S.E. 2d 332; *State v. Roberts,* 270 N.C. 449, 154 S.E. 2d 536; *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44. Certainly it is the better practice for a trial judge on each occasion that he urges the jury to agree on a verdict to emphasize in clear and understandable language that no member of the jury should surrender his conscientious convictions in order to reach a verdict. However, whether prejudicial error results from the language of additional instructions urging the jury to agree on a verdict depends largely on the facts and circumstances of each case. *State v. McKissick, supra.*

In instant case, approximately one hour before the challenged second additional instructions were given, the trial judge had *twice* told the members of the jury that they should reconcile their differences only if they could do so without surrender of their conscientious individual convictions. Neither of the additonal charges contained language which was misleading or which was of a *per se* coercive nature. We think that the lack of a coercive atmosphere in the courtroom is clearly shown in the exchange between the judge and jury when the jury returned to the courtroom to request refreshments. The trial judge immediately granted this request and spontaneously exhibited a concern for the jurors' needs and comfort.

Under these circumstances, it is our opinion that the jury verdict was not coerced by the trial judge's additional charges.

No error.