STATE OF NORTH CAROLINA v. OTHA JAMES BELL

No. 8012SC65

(Filed 19 August 1980)

**Criminal Law § 101.4— permitting jury to take exhibits to jury room — absence of consent by defendant — harmless error**

The trial court erred in permitting the jury to take written statements of defendant and two witnesses into the jury room during its deliberations without defendant's consent, G.S. 15A-1233(b), but such error was not sufficiently prejudicial to warrant a new trial where it does not appear that the error could have changed the outcome of the trial. Nor was defendant prejudiced by the court's refusal also to submit to the jury the first statement made by defendant to an officer where a portion of the statement had been deleted.

APPEAL by defendant from *Braswell, Judge.* Judgment entered 3 October 1979 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 21 May 1980.

Defendant was indicted for second-degree murder by felo-niously and with malice killing Dexter L. McCoy in violation of N.C. Gen. Stat. § 14-17. The jury found defendant guilty of voluntary manslaughter, and a sentence of fifteen to twenty years was imposed.

## STATE'S EVIDENCE

The testimony of each witness will be summarized separately because of the nature of defendant's arguments on appeal. The defendant presented no evidence.

James Edward McLaurin, a Cumberland County Deputy Sheriff, testified that at 9:00 p.m. on 16 April 1979, while investigating a call about a shooting, he found a black male, Dexter McCoy ("Pondie"), lying face down on the ground and a black female, Betty Mae Smith, leaning over him on the corner of James Street and Frederick Avenue. Officer Edward Schneider arrived and they went into the house at 614 Frederick Avenue, the home of defendant Otha James Bell. Defendant Bell stated that a black man had entered his home; that the man was "messing" with defendant; that defendant asked the man to leave; that the man did not leave and that Bell then stabbed him. Bell was polite, normal and acted as if nothing had happened.

Betty Mae Smith testified that she had known the deceased for four or five years and had been his girl friend for three years. Ms. Smith had for one week worked for defendant at a rate of twenty dollars a week running defendant's small beer establishment. On 16 April 1979 Ms. Smith had been living with deceased (Pondie) for two weeks. On that date she went to the defendant's house to get change to open up the "joint." At about 3:00 p.m. the defendant came in and asked Ms. Smith to have sex with him. She left to go to defendant's house and had intercourse with him. Before she left she asked for her "weekly pay" and the defendant said she would have to wait until the morning. She returned to the store. Pondie came into the store and she told him that she did "it" with defendant and Pondie asked her for the money. After she told Pondie what defendant had said, Pondie, Phyllis Denise LeSane and she went to defend-

ant's house. Defendant asked her for the change, at which time she gave him the change and asked defendant again for her money. Defendant told her that he did not have it then, and he did not want to get it from his stash. She walked out and told Pondie that defendant would not pay her until the next day. Pondie got mad. They went to the door and defendant hollered for them to come inside. The two went back in the house, leaving Denise on the porch. Pondie said, "I think you owe Betty some money," and Pondie and defendant started arguing. Defendant said that Pondie had nothing to do with it. They were in the kitchen. Pondie told defendant that he (Pondie) was going to get the money before he left, and he was going to "up him" (defendant) for the ten dollars. Defendant asked Pondie to leave. After about five minutes, defendant walked out of the room, went into the bedroom a couple of minutes, then came back in and pushed Pondie out of the way. Pondie said, "Don't push me any more." Defendant went to the door and asked both of them to leave. Pondie was standing facing her with his back toward defendant. Defendant opened a drawer, and, as Pondie was turning around slowly, defendant stabbed Pondie once with a butcher knife. Pondie ran out the door. She asked if she could use the phone and defendant "grabbed the knife after" her. She ran out. She never saw a weapon in the hand of Pondie. Defendant had been drinking that day.

Larry Marshall Brown and William Huggins, medical technicians with the Cumberland County Ambulance Service, testified that McCoy had no signs of life when they arrived on the scene.

Phyllis Denise LeSane stated that she went with Pondie and Betty to defendant's house; that she stayed outside when Pondie and Betty went in; that she never heard Pondie's voice, but she heard defendant tell them to leave; and that the next thing she knew was that Pondie came out holding his bleeding chest.

Edward Leroy Schneider, a police officer with the Cumberland County Sheriff's Department, testified that on 16 April 1979, at about 9:00 p.m., he responded to a call about a stabbing. He pulled up beside Officer McLaurin's vehicle. The black

woman in McLaurin's car said that the man in the house stabbed McCoy. After the officers went to defendant's house, knocked and identified themselves, defendant came to the door, identified himself as "O.J. Bell" and said, "He shouldn't have messed with me." The officers read defendant his rights. When they asked defendant what happened, defendant said, "Yes, I stabbed the boy"; "[h]e shouldn't have messed with me"; "[h]e come in here and started messing with me and I cut him." Defendant then stated that he had used a butcher knife, washed the blood off and put it back in the drawer. Defendant also stated that he had sex with Betty and had paid her ten dollars, but that she came back with this man saying "it" cost twenty dollars.

Floyd Thomas, Director of the City Bureau of Identification, identified the 11-½ inch knife, described the house and stated that McCoy had no weapons on his person.

Harold Lee Brigman, a detective in the Cumberland County Sheriff's Department, testified that he took a statement from Phyllis LeSane. In this statement Ms. LeSane stated that she had stayed outside while Dexter and Betty went inside; that she overheard someone arguing; that Dexter came out the front door holding his chest; that Betty went back to ask defendant to use the phone to call for help and he would not let her use it; and that the argument between defendant and McCoy had something to do with money that defendant owed Dexter McCoy.

Brigman also took a statement from Betty Mae Smith, in which she stated, in relevant part:

"I asked Bell again for my money for the week and he said he would give it to me in the morning. . . . I told Pindy. . . . Pindy got mad and told me that he wanted me to go back in there with him to get my money. . . . Bell answered the door and we walked in the kitchen. Pindy asked Bell if he didn't owe Betty some money for this week's work. Bell said no, not really, because I had borrowed Ten dollars from him; then Pindy told him that he still owed me Ten dollars out of the Twenty dollars. They kept on arguing about the money, saying the same thing over and over. Finally Bell

---

---

walked away and went into the bedroom. They quit talking for a moment and then Bell told Pindy and me to get out of his house. Pindy told him he was not leaving until he got my money; then Bell walked back into the kitchen and pushed Pindy out of the way; then he opened a drawer and grabbed up a knife. He then stabbed Pindy in the chest with the knife; then Pindy ran out the door and I ran behind him . . . ."

Ms. Smith also stated that she saw defendant stab Dexter Leon McCoy in the chest with a brown-handled butcher knife, and that at no time did McCoy have a weapon.

Claude Maxwell, a detective with the Cumberland County Sheriff's Department stated that, at about 9:30 p.m. on 16 April 1979, after advising defendant of his rights, he took a statement from defendant in which defendant stated, in relevant part:

"Me and a girl whose name I know as Betty were at my house at 614 Frederick Avenue. We went to bed and she got up and went out and met a man and she brought him back to the house. They knocked and I opened the door and said come on in and they both came in. The man said, 'How about upping Twenty dollars to this girl,' and I said, 'What do you have to do with it?' He said that I owed the girl some money. I then told him I had loaned the girl Ten dollars last week. He then turned to the girl and asked her why she didn't tell him about it. He then told me to give her Ten more dollars to make it Twenty dollars. He then bowed up and I told him to get out; that I was dealing with the woman, not the man. He kept arguing about the money and I picked up the knife and busted him with it."

Defendant also stated that McCoy did not hit defendant or grab defendant; that McCoy was "standing with his hands in his pockets"; and that he stabbed defendant in the kitchen one time with a butcher knife.

Finally, Charles Lewis Wells, a pathologist with Cumberland County Hospital, testified: That McCoy's wound was about ten inches deep and that his right coronary artery, his tricuspid valve, and his right ventricle were all severed; that in his opin-

ion the cause of McCoy's death was a stab wound to the heart accompanied by shock, hemorrhage and tamponade; and that immediate medical attention would not have prevented McCoy's death.

The State rested its case, the court properly instructed the jury on second-degree murder, voluntary manslaughter and self-defense. The jury retired but then returned to the courtroom and asked for the exhibits of the statements of the three people involved — the defendant, Betty Mae Smith and Phyllis Denise LeSane. The jury requested that they be allowed to take the exhibits into the jury room and asked for an instruction on malice. A bench conference was held. The defendant's counsel objected to and did not consent to submission of the material to the jury. The court, "over objection of the defendant and conceiving it to be in the best interest of justice and conceiving the request to be an appropriate one," allowed the jury to take the exhibits into the jury room. The court then stated for the record:

> "The Court feels that in the practicality of trials, that occasions can and do arise when it causes more harm not to send the requested materials to the jury than when it does — to send the requested materials to the jury; and the Court could not conceive of any appropriate words it could have said which would have alleviated mental inquiry in the minds of the Jurors as to why the Court did not send the exhibits — or to which counsel objected to the sending of the exhibits to the Jury and the Court concludes that in the overall administration of justice, there is nothing per se so overriding within the context of either statement as to unduly prejudice either party to the Jury; and in summary, the Court feels this was a proper exercise of the due administrations [sic] of justice and that it was a proper function of the inherent power of the Court to accede to a proper request by the Jury, and therefore, the Court did it."

Thereafter defense counsel moved that a statement by defendant given to Schneider, except for a portion ("he was [a] convicted felon") excised due to defendant's pretrial motion *in limine*, also be submitted to the jury. The court, after quoting

G.S. 15A-1233(b) and quoting the excised portion, felt that submitting the statement without the excised portion would positively prejudice one side or the other, and thereafter denied the request of defense counsel.

*Attorney General Edmisten by Associate Attorney Francis W. Crawley for the State.*

*Assistant Public Defender James R. Parish for defendant appellant.*

CLARK, Judge.

Defendant contends that the trial court committed reversible error by permitting the jury during deliberation to take three witnesses' statements into the jury room in violation of N.C. Gen. Stat. § 15A-1233, which statute provides in relevant part:

> "(b) *Upon request* by the jury and *with consent* of all parties, the judge *may in his discretion* permit the jury to take to the jury room exhibits and writings which have been received in evidence. If the judge permits the jury to take to the jury room requested exhibits and writings, he may have the jury take *additional material or first review other evidence relating to the same issue* so as not to give undue prominence to the exhibits or writings taken to the jury room. If the judge permits an exhibit to be taken to the jury room, he must, upon request, instruct the jury not to conduct any experiments with the exhibit." [Emphasis added.]

We do not agree with defendant's contention. There is no doubt that, pursuant to N.C. Gen. Stat. § 15A-1233(b), *supra*, it was error for the trial court to submit the statements to the jury without the consent of defendant. The question before us, then, is whether such error is sufficiently prejudicial to warrant a new trial. "A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would

State v. Bell

have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant . . . ." N.C. Gen. Stat. § 15A-1443(a).

Defendant, however, correctly cites *Gooding v. Pope,* 194 N.C. 403, 140 S.E. 21 (1927); *Brown v. Buchanan,* 194 N.C. 675, 140 S.E. 749 (1927); *Nicholson v. Eureka Lumber Co.,* 156 N.C. 59, 72 S.E. 86 (1911); *Williams v. Thomas,* 78 N.C. 47 (1878); *Burton v. Wilkes,* 66 N.C. 604 (1872); *Watson v. Davis,* 52 N.C. 178 (1859) and *Outlaw v. Hurdle,* 46 N.C. 150 (1853), for the proposition that at common law it was reversible error to allow, over objection, the jury to take evidence into the jury room in civil cases. The defendant explains, in addition, that our Supreme Court has also stated in *dicta* that it was error to allow, over objection, the jury to take evidence into the jury room in a criminal case. *State v. Stephenson,* 218 N.C. 258, 10 S.E. 2d 819 (1940).

We note, however, that in *State v. Haltom,* 19 N.C. App. 646, 199 S.E. 2d 708 (1973), *cert. denied,* 284 N.C. 619, 201 S.E. 2d 691 (1974), written prior to the enactment of N.C. Gen. Stat. § 15A-1233, this Court held that prejudice must be shown in order that permission to take evidence into the jury room be reversible error. *See also, Gooding v. Pope, supra,* where the court found no prejudicial error and *State v. Stephenson, supra,* 218 N.C. at 265 where the court stressed the "especially objectional" features of the writings sent to the jury room. In consideration of the rule that statutes must be construed to be in derogation of common law, we elect to reaffirm *State v. Haltom* in view of N.C. Gen. Stat. § 15A-1443(a). *See, Brown v. Buchanan, supra,* 194 N.C. at 679 (effect of statute on this common law rule). Defendant neither raised at the trial level, nor argued for the first time on appeal (were he allowed to do so), that his constitutional right to a jury trial has been denied, and we do not address that question; consequently, N.C. Gen. Stat. § 15A-1443(b) does not apply.

We have carefully considered defendant's argument that the error was in fact prejudicial because the three written statements, set out in detail above, presented the State's case in the strongest possible light while points elicited during the trial testimony of Betty Smith and Phyllis Denise LeSane, also

set out in detail above, were not allowed to be taken back to the jury room. In particular, defendant argues that the statements sent to the jury room did not fully show that McCoy was the aggressor, as did the testimony presented at trial. We note, however, that the statement of Betty Mae Smith sent to the jury room did in fact indicate that "Pondie got mad"; that Pondie said that defendant owed Betty money and that defendant and Pondie argued while in defendant's house. That Pondie said he would "up" defendant as well as defendant's statement that Pondie was "messing" with him were also included in defendant's statement sent to the jury. The evidence against defendant, both the testimony presented at trial and that presented in the statements sent to the jury, was substantial. Even considering that testimony showing Ms. Smith's relationship to the deceased, hence her potential bias, was not sent to the jury room, such evidence was presented to the jury at trial. Defendant has failed to meet his burden of showing how the alleged error would have changed the outcome of the trial.

For the same reason, we find that the error, if any, of the trial court in failing to submit defendant's first statement to the jury is without prejudice to the defendant. In addition, we note that N.C. Gen. Stat. § 15A-1233(b) does not require a trial judge to submit all other statements to the jury and, in light of the fact that a portion of defendant's first statement had been deleted, we cannot say that the trial court abused its discretion in refusing to allow the jury to take this statement into the jury room.

No error.

Chief Judge MORRIS and Judge ERWIN concur.