GAIL HARRIS SHORT, Administratrix of the Estate of CHARLES McCOY SHORT, JR., and GAIL HARRIS SHORT, Individually v. GENERAL MOTORS CORPORATION and J & M CHEVROLET-OLDS, INC.

No. 8310SC1152

(Filed 18 September 1984)

1. **Evidence § 18— experimental evidence—admissibility**

    In an action to recover damages for the death of plaintiff's husband who was killed when the accelerator of his pickup truck allegedly stuck and he ran into a bridge abutment, the trial court did not err in admitting evidence of experimental test drives by expert witnesses for defendant, and the fact that an expert witness drove his truck with full control of the acceleration, while deceased allegedly experienced uncontrolled acceleration, was not such a dissimilarity as to bar evidence of the experiments.

2. **Evidence § 27— videotapes of experimental evidence—corroboration—admissibility**

    The trial court did not err in admitting videotapes of defendant's experimental evidence, since the experts who made comments on the videotapes testified at trial and were available for cross-examination, and the recorded statements were properly admitted as corroborative evidence to strengthen the credibility of the experts' testimony.

APPEAL by plaintiff from *Bailey, Judge.* Judgment entered 14 February 1983 in Superior Court, WAKE County. Heard in the Court of Appeals 30 August 1984.

Plaintiff sued to recover damages for the death of her husband, who was killed when the pickup truck he was driving ran into a bridge abutment. The truck had been purchased from defendant J & M Chevrolet-Olds about six months before the accident. Plaintiff's husband had returned the truck to the dealer twice with a complaint of uncontrolled acceleration, a problem that allegedly continued to the day of the accident.

The jury found that plaintiff's husband did not die as a result of any breach of warranty or negligence by defendant General Motors. Plaintiff has not appealed as to General Motors. The jury further found that the negligence of J & M Chevrolet-Olds (hereafter defendant) was a cause of the accident, but that the deceased was contributorily negligent.

From a judgment entered on the verdict, dismissing the action with prejudice, plaintiff appeals.

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert M. Clay and Robert W. Sumner, for plaintiff appellant.*

*Teague, Campbell, Conely & Dennis, by C. Woodrow Teague and Richard B. Conely, for defendant appellee.*

WHICHARD, Judge.

[1] Plaintiff contends the court erred in admitting evidence of experimental test drives by expert witnesses for defendant. The rule regarding admissibility of evidence of experiments is set forth in *State v. Jones*, 287 N.C. 84, 98, 214 S.E. 2d 24, 34 (1975), as follows:

> Although experimental evidence should be received with great care, it is admissible when the trial judge finds it to be relevant and of probative value. Even upon such finding the admission of experimental evidence is always subject to the further restriction that the circumstances of the experiment must be *substantially* similar to those of the occurrence before the court. Whether substantial similarity does exist is a question which is reviewable by the appellate courts in the same manner as is any other question of law.

(Emphasis in original; citations omitted.) Precise reproduction of circumstances is not required, particularly where any differences are explainable by an expert witness. *Id.* at 99, 214 S.E. 2d at 34. "Discrepancies in conditions do not necessarily affect the admission of the evidence, but, rather, go to its weight with the jury." *State v. Wright*, 52 N.C. App. 166, 174, 278 S.E. 2d 579, 586, *disc. rev. denied*, 303 N.C. 319 (1981), *citing State v. Brown*, 280 N.C. 588, 187 S.E. 2d 85, *cert. denied*, 409 U.S. 870, 34 L.Ed. 2d 121, 93 S.Ct. 198 (1972).

Testimony from eyewitnesses to the accident indicated that the deceased's truck partially left the road about three hundred thirteen feet before the bridge, so that the right wheels were on the dirt shoulder and the left wheels were on the pavement. The truck then ran in a straight line and at a constant rate of speed into the bridge abutment. One eyewitness estimated its speed at approximately thirty-five to forty-five miles per hour, while another believed the truck was going faster than the forty-five mile per hour speed limit. According to the witnesses, the de-

ceased was leaning over to his right as if he were securing something from the floor of the cab. He sat up about fifty to one hundred feet before he hit the bridge.

A highway patrolman testified that he had been riding in the truck with the deceased earlier on the day of the accident when they experienced uncontrolled acceleration. The deceased had corrected the problem by manipulating the accelerator pedal with his right hand while maintaining control of the truck and steering with his left hand.

In defendant's experiments, an expert witness drove a pickup truck substantially similar to the one driven by the deceased along the path taken by the deceased immediately prior to the accident. Plaintiff contends the experiments were not conducted under conditions substantially similar to those under which the accident occurred because defendant's expert witness drove his truck with full control of the acceleration, whereas the deceased allegedly experienced uncontrolled acceleration. We disagree.

The main purpose of defendant's experiments was to show that in order to keep the truck on a straight line, as he did, the deceased had to have had steering control of the vehicle; therefore he could have brought it back onto the highway before hitting the bridge. Thus, it was necessary for the expert to drive the same path as the deceased at approximately the same speed, and to steer the truck back onto the road fifty to one hundred feet before reaching the bridge. It was not necessary that the experimental truck have an uncontrolled acceleration problem, since it traveled at roughly the same speed as the deceased's truck, a speed which eyewitnesses said was constant.

The experiments tended to show that the deceased, after straightening up in the cab, could have steered his truck back onto the road at the speed he was traveling. The possibility that his accelerator pedal was stuck, and that this affected the deceased's ability to maneuver the truck, was an alleged discrepancy which the jury could believe or disbelieve. If the jury believed plaintiff's theory of uncontrolled acceleration, it could weigh that factor as it felt proper when evaluating defendant's experiments. It was not a factor, however, that necessarily prevented the deceased from avoiding the bridge abutment; and it therefore was

not such a significant dissimilarity from the experiments as to bar their admissibility.

Plaintiff further argues that defendant's experiments did not account for the presence of oncoming traffic. At the time the deceased hit the bridge abutment there was an oncoming vehicle. The oncoming vehicle may have interfered with the deceased bringing his truck back onto the road. Again, however, that factor went to the weight of the evidence with the jury. The oncoming vehicle was in the other lane and over two hundred feet away. It was not an obstacle which necessarily prevented the deceased from steering safely back onto the road. It therefore was not a difference that could have rendered the experiments unreliable or misleading to the jury with respect to the issue of contributory negligence.

Plaintiff contends the court erred in admitting videotapes of defendant's experiments. She argues that the videotapes lacked relevance in that they depicted test drives made under conditions not substantially similar to the accident situation. Having held that defendant's experiments were conducted under conditions substantially similar to those of the accident situation, we reject plaintiff's argument on relevancy.

[2] Plaintiff further argues that the court erred in admitting the videotapes because they contained unsworn hearsay testimony. Defendant's expert witnesses made comments in the videotapes describing the experiments as they performed them. The experts also described the experiments at trial and were available for cross-examination by plaintiff. The court instructed the jury that the videotapes were illustrative evidence, to be considered only to the extent that they corroborated the in-court testimony of defendant's expert witnesses. The recorded statements were not hearsay since they were admitted as corroborative evidence to strengthen the credibility of the experts' testimony, rather than as substantive evidence to prove the truth of the matter asserted therein. *Andrews v. Builders and Finance, Inc.*, 23 N.C. App. 608, 611-12, 209 S.E. 2d 814, 817 (1974), *cert. denied*, 286 N.C. 412, 211 S.E. 2d 793 (1975). *See also* 1 H. Brandis, *North Carolina Evidence* Sections 50-52, 138 (2d rev. ed.). Even if the recorded statements had been admitted erroneously as substantive evidence and therefore hearsay, the availability of the declarants for cross-examina-

tion removed the traditional problems associated with hearsay. The error thus would not have been prejudicial. *See State v. Satterfield*, 27 N.C. App. 270, 272, 218 S.E. 2d 504, 505 (1975).

No error.

Judges ARNOLD and EAGLES concur.