LYNDELL ROBINSON, Guardian of CLARA ROBINSON HUTCHINS, and TIMOTHY ALLEN HUTCHINS v. SEABOARD SYSTEM RAILROAD, INC., NATIONAL RAILROAD PASSENGER CORPORATION, ARCHIE DONALD BROOKS and SOUTHERN RAILWAY COMPANY

No. 8710SC258

(Filed 17 November 1987)

1. **Railroads § 5.6— railroad crossing—testimony concerning near misses—relevant**

   In an action arising from the collision of a train with an automobile close to Central Prison in Raleigh, the testimony of a prison guard concerning several near misses was relevant to prove the dangerous nature of the crossing and that Seaboard and Southern had notice of the hazard.

2. **Evidence § 48— railroad crossing accident—expert on system safety—testimony admissible**

   The trial court did not err in a case arising from an accident at a railroad crossing by admitting the testimony of an expert witness in the field of system safety even though his experience had been primarily in the aviation and aerospace industries, where his education, knowledge, and experience in the field were clearly such as to enable him to assist the jury in understanding the evidence with respect to Southern's own safety rules and in relating that evidence to this accident.

3. **Evidence § 49— railroad crossing accident—testimony of highway engineer regarding signalization—admissible**

   The trial court did not err in an action arising from a railroad crossing accident by admitting the testimony of a Department of Transportation engineer regarding signalization of railroad crossings where the testimony was relevant to the issue of whether or not Southern exercised due care with respect to the crossing and the opinion was given in response to a proper hypothetical question describing the crossing.

4. **Evidence § 48— railroad crossing accident—testimony of expert on human behavior—admissible**

   The trial court did not err in an action arising from a railroad crossing accident by admitting the testimony of a psychologist as an expert witness in the field of human behavior.

5. **Railroads § 5.2— railroad crossing accident—evidence of willful and wanton negligence—sufficient**

   In an action arising from a railroad crossing accident, the trial court properly denied defendants' motions for a directed verdict and judgment n.o.v. with respect to the issues of willful and wanton negligence and punitive damages, and plaintiff was not barred from recovery by her own contributory negligence, where defendant Southern's Operating Rule 103(e) required that railroad cars left standing on tracks be located at least 100 feet from a public or private crossing; cars could be placed more closely to a crossing only with

the approval of a supervisory officer and only if it did not affect safe use of the crossing; when placing cars more closely to a crossing than 100 feet resulted in restricted visibility by motorists using the crossing, precautions such as a flagman or a reduction in speed were required; defendant Southern's supervisor was aware of the requirements of Operating Rule 103(e), and was aware of the use of this crossing, but gave approval to the placement of railway cars on the storage track approximately 30 feet from the crossing and permitted them to remain at that location for at least two days before the accident; two of defendant's employees placed cars on the passing track approximately 30 feet from the crossing the night before the accident; both men were aware of Operating Rule 103(e) but made no effort to determine that their placement of the cars on the passing track complied therewith; the supervisor acknowledged at trial that the location of the cars created a dangerous situation; and the supervisor had not required placement of a flagman or other safety precautions at the crossing.

**6. Husband and Wife § 9; Damages § 11.1— loss of consortium—punitive damages**

The trial court did not err in a negligence action by submitting the issue of punitive damages in connection with plaintiff husband's claim for loss of consortium. Rather than being punished twice for a single wrong, defendant Southern is being punished for separate wrongs to separate victims.

**7. Trial § 11.1— railroad crossing accident—counsel's comments in closing argument—no prejudice**

Although remarks by plaintiff's counsel in his closing argument in a railroad crossing case based on his personal experience and a suggestion that defense witnesses had been coached were inappropriate and beyond proper bounds of vigorous argument, the improprieties were not so flagrant as to influence the jury's verdict.

**8. Railroads § 6.2; Trial § 32.1— railroad crossing accident—duty of railroad to give warning—instructions—no prejudicial error**

There was no prejudicial error in an action arising from a railroad crossing accident from the trial court's erroneous instruction that the railroad had the duty to give a reasonable and timely warning by the blowing of a whistle or a horn, ringing a bell, *and* some other device. The trial court subsequently used *or* in its original instruction and in response to the jury's request for a reinstruction.

**9. Railroads § 6.2; Trial § 32.2— railroad crossing accident—gates or other warning devices—instructions on railroad's duty of care—no prejudicial error**

The trial court in a case arising from a railroad crossing accident did not err in its instruction on the defendant's duty of care where the court instructed the jury that the exercise of due care on the part of the railroad *required* erection of gates or signal devices. When considered contextually, the trial court's instructions provided an adequate explanation of the railroad's duty of care.

**10. Trial § 38.1— railroad crossing accident—requested instruction on violation of internal safety rule—given in substance**

The trial court did not err in an action arising from a railroad crossing accident where defendant railroad requested an instruction that a violation of internal safety rules was not negligence *per se* and the court gave the substance of the requested instruction by instructing the jurors that "obstructions in themselves do not constitute negligence . . . ."

**11. Trial § 33— railroad crossing accident—requested instructions on application of law to evidence—no error**

The trial court did not err in an action arising from a railroad crossing accident by refusing defendant's requested instructions consisting of explanations of the law's application to the evidence in this case. Such instructions are no longer required and the court's instructions adequately define the law with respect to each substantive feature of the case.

**12. Trial § 13— exhibits allowed in jury room without consent of both parties—no prejudice**

There was no prejudice in an action arising from a railroad crossing accident where the jury was allowed to take into the jury room a memorandum and photographic exhibits without the consent of both parties. Parties asserting error must demonstrate that they have been prejudiced thereby. N.C.G.S. § 1A-1, Rule 61.

**13. Evidence § 18— railroad crossing accident—audio experiments—admissible**

The trial court did not err in an action arising from a railroad crossing accident by admitting testimony of an expert in the field of acoustics who had conducted certain tests or experiments at the crossing in an attempt to determine the audibility of the train horn. Substantial similarity existed between conditions at the time of the accident and those at the time of the experiment, and the dissimilarities complained of by plaintiffs were sufficiently explained as to enable the jury to evaluate the differences and determine the proper weight to be given the evidence.

**14. Evidence § 26— railroad crossing accident—testimony concerning position of radio volume control knob after accident—admissible**

The trial court did not err in a railroad crossing accident case by permitting the investigating police officer to testify as to the position in which he found the volume control knob of plaintiff's car radio two days after the accident where the wrecker operator who removed the vehicle from the scene of the accident testified that he had not manipulated the controls nor, to his knowledge, had anyone in his place of business; an expert testified that the knob had such slight mass that it would not likely have been moved or affected by the collision; and the plaintiff's father testified that it was her habit to play the car radio at a low volume. The bare possibility that the position of the knob may have been disturbed by the activities of rescue personnel bears upon the weight rather than the admissibility of the evidence.

APPEAL by plaintiffs and defendant Southern Railway Co. from *Farmer, Judge.* Judgment entered 13 June 1986 in Superior

Court, WAKE County. Heard in the Court of Appeals 30 September 1987.

On the morning of 3 October 1983, Clara Robinson Hutchins was struck by a National Railroad Passenger Corporation (Amtrak) train as she attempted to drive her automobile across railroad tracks at a crossing located just north of Central Prison in Raleigh. Defendant Brooks, an employee of defendant Seaboard System Railroad, Inc. (Seaboard), was the engineer of the Amtrak train. The crossing at which the accident occurred was marked by a crossbuck on one side but had no lights, gates, or other devices to warn motorists of approaching trains. A dirt road running parallel to the tracks is located to the south of the crossing; to the north is a parking lot for the North Carolina Department of Correction from which one may gain access to Morgan Street. Although it was not a public crossing, the "prison crossing" had been used by members of the public for several years because the Boylan Avenue bridge over the railroad tracks had been closed since 1978.

The "prison crossing" traversed four sets of railroad tracks. Mrs. Hutchins was attempting to cross the tracks from the south side to the north side. The four sets of tracks, proceeding from south to north, consisted of a storage track, a passing track, the northbound mainline and the southbound mainline. The passing and storage tracks were controlled by defendant Southern Railway (Southern) and the two mainlines were jointly controlled by Southern and Seaboard and were operated pursuant to Seaboard's timetable. On the morning of the accident, there were boxcars standing on the passing and storage tracks on both sides of the crossing, having been placed there by Southern employees. The cars standing on the storage and passing tracks to the west of the crossing, the direction from which the Amtrak train approached, were located within thirty feet of the crossing, obstructing vision of the mainline tracks to the west of the crossing. Southern's Operating Rule 103(e) required that cars or engines left standing on tracks must, if possible, be located at least one hundred feet from a public or private crossing.

Officer J. S. Murray, a guard at Central Prison, witnessed the accident from his post on a guard tower at the prison. He testified that Mrs. Hutchins stopped before crossing each set of

tracks. He also testified that he heard the train's horn sound three times as it approached the crossing. Defendant Brooks testified that he saw the front of Mrs. Hutchins' car coming out from behind the parked railroad cars when it was approximately three to four hundred feet in front of the locomotive. He applied the emergency brakes but was unable to stop the train which was travelling at approximately forty-five miles per hour.

Mrs. Hutchins was severely and permanently injured in the collision. She and her husband, Timothy Hutchins, brought this suit to recover for her personal injuries and for Mr. Hutchins' loss of consortium. Following a judicial determination that Mrs. Hutchins was mentally incompetent, her father, Lyndell Robinson, was appointed as her general guardian and was made a party plaintiff. Plaintiffs submitted to a voluntary dismissal of the action as to Amtrak. A jury returned a verdict finding that Mrs. Hutchins' injuries were proximately caused by the negligence of Seaboard and Southern, that she had been contributorily negligent, and that Southern's negligence amounted to willful and wanton negligence. The jury awarded Mrs. Hutchins $1,773,340.00 in compensatory damages and $100,000.00 in punitive damages. Mr. Hutchins was awarded $5,000.00 in compensatory and $5,000.00 in punitive damages. From entry of judgment accordingly, plaintiffs and defendant Southern have appealed.

*Thorp, Fuller & Slifkin, P.A., by William L. Thorp and Anne R. Slifkin for plaintiff-appellant Lyndell Robinson, Guardian of Clara Robinson Hutchins.*

*Thompson & McAllaster, by Carolyn McAllaster for plaintiff-appellant Timothy Allen Hutchins.*

*Hunton & Williams, by Odes L. Stroupe, Jr. and Julius A. Rousseau, III, for defendant-appellant Southern Railway Company.*

*Maupin, Taylor, Ellis & Adams, P.A., by John T. Williamson and John C. Millberg for defendant-appellee Seaboard System Railroad, Inc.*

MARTIN, Judge.

### Southern Railway Company's Appeal

The primary question raised by the twenty-one assignments of error brought forward and argued in the appellant's brief filed by Southern is whether the evidence was sufficient to warrant submission of the issues of willful and wanton negligence and punitive damages to the jury. Although the question is a close one, we conclude that the issues were appropriately submitted. We have also reviewed carefully Southern's other contentions and find no prejudicial error.

[1] Southern has assigned error to several of the trial court's evidentiary rulings. The first of these evidentiary assignments of error is directed to the admission of testimony by Correctional Officer Murray that from 1980 until the date of the accident, he had witnessed several incidents in which vehicles travelling from south to north over the "prison crossing" had nearly been struck by trains. Citing *Martin v. Amusements of America, Inc.*, 38 N.C. App. 130, 247 S.E. 2d 639, *disc. rev. denied*, 296 N.C. 106, 249 S.E. 2d 804 (1978), Southern argues that plaintiffs failed to show that these "near misses" occurred under circumstances sufficiently similar to Mrs. Hutchins' accident to render the evidence relevant. In our view, however, the evidence was relevant, not to show that Mrs. Hutchins' accident occurred under circumstances similar to the "near misses," but as tending to prove the dangerous nature of the crossing and that Seaboard and Southern had notice of the hazard, especially in light of the increased public use of the crossing.

[2] Southern also contends that the trial court erred in admitting the expert opinion testimony of C. O. Miller, who was permitted to testify as an expert witness in the field of "system safety." Southern argues that because Mr. Miller's experience had been primarily in the aviation and aerospace industries, rather than in the railroad industry, he was not qualified to express opinions with respect to the adequacy of Southern's safety program.

The trial judge is afforded broad discretion in determining whether to allow expert testimony; his decision will not be disturbed unless there is no evidence to support it. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370, 45 A.L.R. 4th 1147 (1984). "It is not

necessary that an expert be experienced with the identical subject area in a particular case or that the expert be a specialist, licensed, or even engaged in a specific profession." *Id.* at 140, 322 S.E. 2d at 376, 45 A.L.R. 4th at 1158. In the present case, Mr. Miller's testimony revealed an extensive background of education and experience in the fields of safety and management which included, *inter alia*, teaching courses in safety management and system safety, employment as Director of the Bureau of Aviation Safety of the National Transportation Safety Board, and experience as a consultant in the field of system safety and safety management. He testified that the same principles of system safety applicable to those industries in which he had actual experience were also applicable to railroads. His education, knowledge, and experience in the field were clearly such as to enable him to assist the jury in understanding the evidence with respect to Southern's own safety rules and in relating that evidence to the accident in which Mrs. Hutchins was injured. *See* G.S. 8C-1, Rule 702. Moreover, the testimony given by Mr. Miller was within the scope of his expertise and Southern's contentions to the contrary are overruled.

[3] Southern's next assignments of error are directed to the testimony of Ernest Mallard, whose responsibilities as an engineer employed by the North Carolina Department of Transportation include the signalization of railroad crossings. Mr. Mallard was permitted, over objection, to state his opinion that crossing gates would be the preferred manner of signalization of the "prison crossing." Southern contends that because the "prison crossing" was not a public crossing and had not been evaluated by the Department of Transportation, Mr. Mallard's testimony was speculative and irrelevant. We disagree. Mr. Mallard's testimony was relevant to the issue of whether or not Southern exercised due care with respect to the "prison crossing."

His opinion was given in response to a proper hypothetical question describing the crossing. He specifically qualified his opinion, stating, "if the Board of Transportation had ruled that signalization was required and it was my job to select [the] type of signalization required, I would select gates." Although Mr. Mallard testified as to the various factors considered by the Department of Transportation in determining the need for signalization of crossings, he did not state any opinion with respect to whether

the "prison crossing" required signalization. We see no reasonable possibility that the jury could have been misled or confused by Mr. Mallard's testimony to Southern's prejudice and its assignments of error with respect thereto are overruled.

[4] Southern next assigns error to certain testimony elicited from Dr. Robert Cunitz, a psychologist who was permitted to testify, without objection, as an expert witness in the field of human behavior. Southern contends that Dr. Cunitz's testimony exceeded the area of his expertise. Without repeating all of the testimony to which Southern objects, and mindful of the rule that the admissibility of expert testimony is within the sound discretion of the trial court, *State v. Bullard, supra,* we conclude that the opinions expressed by Dr. Cunitz were within his area of expertise and we find no abuse of discretion in the trial court's rulings with respect thereto. This assignment of error is overruled.

[5] Contending that there was no evidence that Mrs. Hutchins was injured as a result of any willful and wanton negligence on its part, Southern assigns error to the denial of its motions for directed verdict and judgment notwithstanding the verdict with respect to the issues of willful and wanton negligence and punitive damages. In addition, Southern argues that because there was no evidence of willful and wanton negligence, Mrs. Hutchins is barred from recovery by her own contributory negligence.

It is well established that a party's contributory negligence will not preclude recovery for injuries proximately caused by another's willful and wanton negligence. *Fry v. Southern Public Utilities Co.,* 183 N.C. 282, 111 S.E. 354 (1922). Moreover, punitive damages are properly recoverable where injury results from willful or wanton conduct. *Hinson v. Dawson,* 244 N.C. 23, 92 S.E. 2d 393, 62 A.L.R. 2d 806 (1956). The concept of willful and wanton negligence was explained by our Supreme Court in *Foster v. Hyman,* 197 N.C. 189, 191, 148 S.E. 36, 37-38 (1929):

> An act is done wilfully when it is done purposely and deliberately in violation of law (citations omitted), or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason. (Citation omitted). "The true conception of wilful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the

person owing it has assumed by contract, or which is imposed on the person by operation of law." (Citation omitted).

An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others. (Citations omitted). A breach of duty may be wanton and wilful while the act is yet negligent . . . . (Citation omitted).

In *Wagoner v. North Carolina Railroad Co.*, 238 N.C. 162, 168, 77 S.E. 2d 701, 706 (1953), the Court stated:

To constitute willful injury there must be actual knowledge, or that which the law deems to be the equivalent of actual knowledge, of the peril to be apprehended, coupled with a design, purpose, and intent to do wrong and inflict injury. A wanton act is one which is performed intentionally with a reckless indifference to injurious consequences probable to result therefrom. Ordinary negligence has as its basis that a person charged with negligent conduct should have known the probable consequences of his act. Wanton and willful negligence rests on the assumption that he knew the probable consequences, but was recklessly, wantonly, or intentionally indifferent to the results.

Applying these definitions to the present case, and viewing the evidence in the light most favorable to plaintiff, as is required upon a defendant's challenge to its sufficiency, we are unable to say that plaintiff cannot recover for Southern's willful and wanton negligence under "any reasonable reading of the facts as established by the evidence . . . ." *Taylor v. Walker*, 320 N.C. 729, 734, 360 S.E. 2d 796, 800 (1987). Thus, we hold that the issue of Southern's willful and wanton negligence and the issue of punitive damages were properly submitted to the jury.

In order to prove Southern's negligence, plaintiffs relied upon the theory that Southern, by leaving railroad cars standing in the storage and passing tracks in close proximity to the "prison crossing," had rendered the crossing unusually hazardous, giving rise to a duty on its part to take proper precautions to protect persons using the crossing and to warn such persons of the approach of a train. Plaintiffs contended that Southern was negligent in failing to take any such precautions or protective meas-

ures and that Mrs. Hutchins' injuries proximately resulted from such negligence. It was upon this theory that the trial court instructed the jury with respect to the issue of Southern's ordinary negligence. It follows that a finding of willful or wanton negligence must necessarily be predicated upon the same negligent acts.

The evidence tended to show that Southern's Operating Rule 103(e) required that railroad cars left standing on tracks be located at least one hundred feet from a public or private crossing, if possible. According to the testimony of O. G. Mills, Southern's Division Superintendent, cars could be placed more closely to a crossing only with the approval of a supervisory officer, and then only in the event that it did not affect safe use of the crossing. According to Mr. Mills, safety precautions such as placement of a flagman at the crossing or a reduction in speed of trains were required where the placement of railway cars more closely to a crossing than one hundred feet resulted in restricted visibility by motorists using the crossing.

K. L. Johnson was superintendent of Southern's Raleigh terminal at the time of the accident and was aware of the requirements and purpose of Rule 103(e). He was also aware of the "prison crossing" and of its use, at least by Department of Correction employees. Despite this knowledge, Johnson had given approval to the placement of railway cars on the storage track approximately thirty feet from the "prison crossing" and had permitted them to remain at that location for at least two days before the accident. On the night before the accident, Southern employees Neely and Patterson placed cars on the passing track approximately thirty feet from the crossing and left them standing there. Both men were aware of the requirements of Rule 103(e); neither made any effort to determine that their placement of the cars on the passing track complied therewith. Mr. Johnson acknowledged at the trial that the location of the cars created a dangerous situation. The cars created an obstruction to the vision of motorists traversing the crossing from the south side, so that a train approaching on the northbound mainline could not be seen by such motorists until it was approximately one hundred and sixty feet from the crossing. Notwithstanding this dangerous obstruction of vision, Mr. Johnson did not require placement of a flagman or any other safety precaution at the crossing to negate

the danger posed by the obstruction or to give persons using the crossing adequate warning of the approach of a train. In our view, these circumstances permit a reasonable inference that Southern's employees manifested "a reckless indifference to injurious consequences probable to result" from their breach of a duty recognized by law and by Southern's own rules as necessary to the safety of others. *See Wagner, supra; Foster, supra.* The acts of Southern's employees are imputable to it under *respondeat superior. Fry, supra.* These assignments of error are overruled.

**[6]** Southern also contends that the trial court erred by submitting to the jury an issue of punitive damages in connection with Timothy Hutchins' claim for loss of consortium. Southern argues that a spouse's claim for loss of consortium is a derivative claim and that to permit the recovery of punitive damages in such a claim would "penalize the defendant twice for the same act to one individual." The question has not heretofore been squarely addressed in North Carolina. We reject Southern's contentions and hold that damages for loss of consortium may include punitive damages where the injury results from willful and wanton negligence.

In *Nicholson v. Hugh Chatham Memorial Hospital, Inc.,* 300 N.C. 295, 266 S.E. 2d 818 (1980), the Supreme Court expressly overruled its former decisions to the contrary and restored a spouse's right to sue for loss of consortium resulting from the negligence of a third party. In doing so, the Court recognized that the loss to the uninjured spouse of the services, society, companionship, sexual gratification, and affection of the injured spouse was a separate wrong, though it resulted from the same wrongful conduct giving rise to a claim by the injured spouse. In order to avoid the prospect of double recovery, the Court required that an action by one spouse for loss of consortium be joined with the other spouse's action for personal injury. *Id.*

In *DiDonato v. Wortman,* 320 N.C. 423, 358 S.E. 2d 489, *reh'g denied,* 320 N.C. 799, 361 S.E. 2d 73 (1987), an action for the wrongful death of a viable fetus, the Court held that punitive damages were recoverable in both the wrongful death action and in an action by the parents for personal injuries. In order to avoid double punishment of defendants for a single act of negligence,

the Court required that the claim for the wrongful death of the fetus be joined with the parents' action based on the same negligent act. *Id.*

> In *Nicholson* there were, of course, two alleged victims— the wife and the husband—and therefore two alleged torts. In this case there are *three* alleged victims—the fetus, the mother and the father. Recovery of punitive damages in the wrongful death action would be related to the death suffered by the fetus, while recovery of punitive damages in the parents' personal injury suit would be related to injuries suffered by the mother and father.

*Id.* at 433, 358 S.E. 2d at 495 (emphasis original).

Applying the reasoning of *Nicholson* and *DiDonato* to the present case, we hold that punitive damages are available to Mr. Hutchins in his action for loss of consortium as well as to Mrs. Hutchins in her action for personal injury. Rather than being punished twice for a single wrong, Southern is being punished for separate wrongs to separate victims—the physical injury suffered by Mrs. Hutchins and the wholly separate injury suffered by Mr. Hutchins for loss of consortium.

[7] Southern's next assignments of error relate to comments made by plaintiff's counsel in his closing argument to the jury. The remarks to which Southern excepts include comments based on counsel's personal experience and a suggestion that Southern's witnesses had been coached. When Southern objected to the remarks, the trial court admonished plaintiff's counsel to confine his argument to those matters in evidence and later instructed the jury to "disregard what [the attorneys] say the evidence is or tends to show and be guided exclusively by your own recollection of the evidence." While we agree with Southern that counsel's remarks were inappropriate and beyond the proper bounds of vigorous argument, we do not believe that the improprieties were so flagrant as to influence the jury's verdict and thus we decline to award a new trial by reason thereof. *See State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976).

Southern next assigns error to various portions of the trial court's charge to the jury. Southern argues that the trial court erred both in giving certain instructions to the jury, as well as in

refusing to give other instructions requested by it. We have thoroughly reviewed the trial court's charge and find no prejudicial error therein.

Jury instructions must be considered and reviewed in their entirety; the instructions will not be dissected and examined in fragments. *Gregory v. Lynch*, 271 N.C. 198, 155 S.E. 2d 488 (1967). Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury. *Id.*; *Caldwell v. Southern Railway Co.*, 218 N.C. 63, 10 S.E. 2d 680 (1940). Bearing these principles in mind, we address Southern's arguments.

[8] Southern first assigns error to the following portion of the charge, given by the court on the issue of Engineer Brooks' negligence:

> Even though there are posted signs which are adequate to give a traveler upon the highway any notice of the presence of a railroad crossing, it is also the duty [sic] the railroad to give reasonable and timely warning of the approach of its train to the crossing by the blowing of the whistle or horn, by ringing the bell, *and* by some other device reasonably calculated to attract the attention of those approaching the crossing upon the highway.

(Emphasis added.) Southern argues that the court should have said "*or* by some other device" rather than "*and* by some other device." Assuming *arguendo* that it was error for the trial court to use the word "*and*," we note that when the court subsequently instructed the jury upon the issues of negligence on the part of Seaboard and Southern, it gave essentially the identical instruction, but used "or" rather than "and." Moreover, when the jury requested that it be reinstructed upon the issue of negligence of Seaboard and Southern, the trial court again used the word "or." We find no reasonable possibility that the instruction complained of by Southern resulted in any prejudice to it, particularly since the instruction which it contends is the correct one was given to the jury with respect to the issue of Southern's negligence.

> An appellate court, by careful examination, may not infrequently find errors in language used or omitted by the

trial judge in his instructions to the jury upon issues of fact, but in accord with a less technical and more liberal conception of the power to review, the court may also, upon due consideration of all the circumstances surrounding the trial and in light of the matter under investigation, perceive that the errors complained of neither misled the jury nor affected the impartiality of the trial.

*Caldwell, supra,* at 71-72, 10 S.E. 2d at 694. This assignment of error is overruled.

[9]   Southern also assigns error to the following portion of the jury instructions, given on the issue of Seaboard's negligence and incorporated by reference into the court's charge on the issue of Southern's negligence:

The exercise of due care on the part of the railroad *requires* erection of gates or signal devices or the maintenance of a flagman or some other extraordinary protective means where the crossing is unusually hazardous or dangerous.

(Emphasis added.) Citing *Caldwell, supra,* Southern argues that the court should have instructed the jury using the words "may require" rather than "requires." Southern contends that the instruction given left the jury no alternative but to find Southern negligent due to the absence of gates or signals from the crossing. We disagree.

When the charge is examined in its entirety, it is evident that the law was correctly explained to the jury. In *Caldwell, supra,* the court approved the following instructions:

Where a railroad crossing is not peculiarly and unusually dangerous, the exercise of due care on the part of the railroad company does not require it to provide gates, signal devices, watchman, or other such safety methods. However, the exercise of due care on the part of the railroad company *may* require the erection of gates or signal device [sic] or the maintenance of a watchman where the crossing is unusually and peculiarly hazardous. It is for the jury to say whether the crossing in question was, under all the circumstances, peculiarly and unusually hazardous *so as to require* the railroad in the exercise of due care to erect gates or signal

devices or maintain a flagman or such other means of warning and safety.

*Id.* at 70, 10 S.E. 2d at 688 (emphasis added). We find similar wording in the charge given in this case. Immediately preceding the portion of the instruction to which Southern assigns error, the court charged the jury as follows:

> Ordinarily at a grade crossing where no unusually dangerous or hazardous conditions exist, timely signals by sounding the bell or blowing the whistle are adequate; but where there are circumstances of more than ordinary danger and where the surroundings are such as to render the crossing peculiarly and unusually dangerous to those who have a right to pass over it, these factors must be considered in determining whether under the circumstances the operator of the railroad has exercised due care in providing reasonable protection for those who use the crossing *and whether the degree of care which the operator of the railroad is required to exercise to avoid injury at grade crossings imposes the duty to provide safety devices at the crossing.* A violation of that duty is negligence.

(Emphasis added.) Considered contextually, the trial court's instructions provided an adequate explanation of the railroad's duty.

**[10]** Southern also contends that the trial court erred by failing to instruct the jury in accordance with its request for an instruction explaining the legal effect of its violation of its own internal safety rules. Southern correctly argues that a violation of its safety rules is only some evidence of negligence. Therefore, it contends, the trial court should have instructed, as it requested, that a violation of internal safety rules was not negligence *per se.* The internal safety rule to which Southern refers is Southern's internal Operating Rule 103(e), prohibiting the parking of railroad cars within one hundred feet of a crossing. The trial court is required to give a party's requested instructions when they are correct and supported by the evidence; however, they need not be given exactly as submitted, but must only be given in substance. *State v. Davis,* 291 N.C. 1, 229 S.E. 2d 285 (1976); *State v. Mayes,* 86 N.C. App. 569, 359 S.E. 2d 30 (1987). Our review of the instructions reveals that the trial court gave the substance of the re-

quested instruction by instructing the jurors that "[o]bstructions in themselves do not constitute negligence . . . ." This assignment of error is overruled.

[11] Southern has assigned error to the court's refusal to instruct the jury in other particulars requested by it. We have examined these requests and conclude that they consisted of explanations of the law's application to the evidence in this case. Such instructions are no longer required. *See* G.S. 1A-1, Rule 51; 1985 Sess. Laws, c. 537, s. 2. The trial court's instructions to the jury adequately defined the law with respect to every substantive feature of the case. Southern's contentions to the contrary are overruled.

[12] During the jury's deliberations, the jury requested that it be permitted to see one of plaintiff's exhibits — a Seaboard internal memorandum tending to show that Seaboard's division superintendent was aware of frequent public usage of the prison crossing. Over Seaboard's objection, in which Southern later joined, the court permitted the exhibit to be sent to the jury room. Later in its deliberations, the jury requested that the court send thirteen photographic exhibits to the jury room. Without either the consent or objection of any party, the court granted the request and permitted the exhibits to be taken to the jury room. Southern argues that by permitting exhibits to be taken to the jury room without the express consent of all parties, the trial court committed reversible error automatically entitling it to a new trial. We disagree.

It is well established in this State that it is error for the trial court to allow the jury to take exhibits to the jury room during deliberations unless all parties have consented thereto. *Nicholson v. Lumber Co.*, 156 N.C. 59, 72 S.E. 86 (1911); *Doby v. Fowler*, 49 N.C. App. 162, 270 S.E. 2d 532 (1980).

> The jury ought to make up their verdict upon evidence offered to their senses, *i.e.*, what they see and hear in the presence of the court, and should not be allowed to take papers, which have been received as competent evidence, into the jury room, so as to make a comparison of hand-writing, or draw any other inference which their imaginations may suggest, because the opposite party ought to have an opportuni-

ty to reply to any suggestion of an inference contrary to what was made in open court.

*Watson v. Davis*, 52 N.C. 178, 181 (1859). Furthermore, the failure to make a timely objection to the taking of the exhibits to the jury room does not waive the error; "specific consent is required" of all parties. *Doby, supra*, at 164, 270 S.E. 2d at 533. Thus, it was error for the judge to allow the jury to take the exhibits to the jury room during its deliberations.

In our view, however, this error does not require a new trial. Notwithstanding decisions which have, without discussing whether similar errors resulted in prejudice, treated them as reversible *per se; see, e.g., State v. Stephenson*, 218 N.C. 258, 10 S.E. 2d 819 (1940); *Brown v. Buchanan*, 194 N.C. 675, 140 S.E. 749 (1927); *Nicholson v. Lumber Co., supra; Outlaw v. Hurdle*, 46 N.C. 150 (1853); *Doby, supra;* we believe that the party asserting the error must demonstrate that he has been prejudiced thereby. We find support for this position in *Posey v. Patton*, 109 N.C. 455, 14 S.E. 64 (1891), where the Court found no error when the trial court had made the written notation "$493.88, with interest from 1 May 1890," upon the issue sheet submitted to the jury and neglected to erase the notation before submitting the paper to the jury. The jury returned a verdict in the precise amount of the notation. After realizing its mistake, the court brought the matter to the attention of the jury, which responded that it had not been influenced by the notation. Our Supreme Court commented: "If there had been anything tending even to put it in doubt, whether prejudice may not have been done the appellant by the inadvertence, we feel sure the just judge who presided would unhesitatingly and promptly have set the verdict aside." *Id.* at 457, 14 S.E. at 65. In *State v. Haltom*, 19 N.C. App. 646, 199 S.E. 2d 708 (1973), *cert. denied and appeal dismissed*, 284 N.C. 619, 201 S.E. 2d 691 (1974), a panel of this court held that the trial court's error in allowing the jury to take the State's evidence to the jury room was not grounds for a new trial where the defendant failed to show that the error was prejudicial. *See also State v. Bell*, 48 N.C. App. 356, 269 S.E. 2d 201, *appeal dismissed*, 301 N.C. 528, 273 S.E. 2d 455 (1980). And in *Collins v. Ogburn Realty Co.*, 49 N.C. App. 316, 271 S.E. 2d 512 (1980), the court granted a new trial because the trial court erroneously allowed the jury to view exhibits, and because it believed "that such action by the trial court prejudicially af-

fected plaintiffs' right to have the question submitted to the jury considered impartially . . . ." *Id.* at 321, 271 S.E. 2d at 515. Finally, G.S. 1A-1, Rule 61, provides that error is not grounds for a new trial unless it amounts to the denial of a substantial right.

We perceive no way in which justice can be effectively served by requiring a new trial due to error that could not have affected the rights of the complaining party. Southern has not demonstrated that it was prejudiced in any manner by the fact that the Seaboard memorandum or the photographs were taken to the jury room. This assignment of error is overruled.

### Plaintiffs' Appeal

Plaintiffs have specifically abandoned all of their assignments of error save two, both of which relate to evidence admitted over their objection and bearing upon Mrs. Hutchins' ability to hear the approaching train and thus relevant to the issue of her contributory negligence. Though the verdict of the jury finding willful and wanton negligence on the part of Southern and our decision upholding that verdict render moot any question of Mrs. Hutchins' contributory negligence as between plaintiffs and Southern, the same is not true as between plaintiffs and Seaboard because Seaboard's negligence was not found willful and wanton by the jury.

[13] The first of plaintiffs' assignments of error concerns the testimony of David Nibbelin, an expert witness in the field of acoustics who had conducted certain tests or experiments at the "prison crossing" in an attempt to determine the audibility of the train horn to Mrs. Hutchins as she approached and traversed the crossing on the date of the accident. Plaintiffs contend that the conditions under which the experiments were conducted were acoustically dissimilar to the conditions existing on the date of the accident so that Mr. Nibbelin's testimony concerning the tests and the results thereof was inadmissible. We disagree.

An experiment must be made under substantially similar circumstances to those existing at the time of the occurrence with which the action is concerned, and the results of the experiment must have a logical tendency to prove or disprove an issue arising out of that occurrence. *Mintz v. Atlantic Coast Line Railroad Co.,* 236 N.C. 109, 72 S.E. 2d 38 (1952). However, substantial similarity

is sufficient, and a lack of complete similarity goes to the weight, not the admissibility, of the testimony. *State v. Brown*, 280 N.C. 588, 187 S.E. 2d 85, *cert. denied*, 409 U.S. 870, 34 L.Ed. 2d 121, 93 S.Ct. 198 (1972); *State v. Phillips*, 228 N.C. 595, 46 S.E. 2d 720 (1948); *Short v. General Motors Corp.*, 70 N.C. App. 454, 320 S.E. 2d 19, *disc. rev. denied*, 312 N.C. 623, 323 S.E. 2d 924 (1984). If differences of condition are such as will not cause confusion and can be explained in such a way that the trier of fact may reasonably evaluate their effect, then the trial court may, in its discretion, properly allow the evidence. *State v. Jones*, 287 N.C. 84, 214 S.E. 2d 24 (1975). "Whether substantial similarity does exist is a question which is reviewable by the appellate courts in the same manner as is any other question of law." *Id.* at 98, 214 S.E. 2d at 34.

In his experiment, Mr. Nibbelin utilized an engine and whistle identical to those involved in the accident, the whistle having a pressure approximately two pounds per square inch less than on the day of the accident. Mr. Nibbelin used a car of the same model as that driven by Mrs. Hutchins, had the transmission in the "drive" position with the heater on and the radio tuned according to indications given him by witnesses. The engine was driven by Engineer Brooks, just as it had been on the day of the accident, and Prison Guard Murray was present to give guidance so that the whistle could be blown in a manner as similar as possible to the way it was blown on the day of the accident. Railroad cars were positioned on the storage and passing tracks much as they had been at the time of the accident. Weather conditions were similar. Mr. Nibbelin testified that, due to differences in frequency levels, noises such as might have been made by construction work or traffic on the date of the accident, but not present at the time of the experiment, would have had a negligible effect on Mrs. Hutchins' ability to hear the train whistle. We believe that substantial similarity existed between conditions existing at the time of the accident and those existing at the time of the experiment, and that the dissimilarities complained of by plaintiffs were sufficiently explained as to enable the jury to evaluate the differences and determine the proper weight to be given the evidence. Moreover, Mr. Nibbelin's testimony clearly had probative value on the question of whether Mrs. Hutchins received adequate warning of the train's approach and was therefore relevant to the issues of defendants' negligence and Mrs. Hutchins' con-

tributory negligence. There was no error in the admission of this testimony.

[14] By their other assignment of error, plaintiffs contend that the trial court erred by permitting the investigating police officer to testify as to the position in which he found the volume control knob of Mrs. Hutchins' car radio two days after the accident. Plaintiffs argue that the position of the knob at the time of the officer's inspection of the car is not competent evidence of its position at the time of the accident because it could have been altered in any number of ways, such as the force of the collision, the movements of emergency medical personnel attending to Mrs. Hutchins inside the car after the accident, or tampering.

The test for determining whether evidence of a condition existing at one time is admissible as evidence of a condition existing at another time "depends altogether on the nature of the subject matter, the length of time intervening, and the extent of the showing, if any, on the question of whether or not the condition had changed in the meantime." *Tennessee-Carolina Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 241, 210 S.E. 2d 181, 185 (1974), *quoting* 1 Stanbury's North Carolina Evidence § 90 (Brandis Rev. 1973). "The proper inquiry in each instance is the degree of likelihood that the condition has remained unchanged." *Id.* at 242, 210 S.E. 2d at 185. The admissibility of such evidence is largely a matter within the discretion of the trial court. 1 Brandis on North Carolina Evidence § 90 (2nd Rev. Ed. 1982).

The evidence with respect to the position of the radio volume control knob was relevant to the question of Mrs. Hutchins' ability or inability to hear the horn of the approaching train and, thus, to the issue of her contributory negligence. The police officer testified that at the time of his inspection of the automobile, the radio volume control knob was "one quarter on." The wrecker operator who removed the vehicle from the scene of the accident testified that he had not manipulated the controls nor, to his knowledge, had anyone at his place of business. Mr. Nibbelin testified that the knob had such slight mass that it would not likely have been moved or affected by the collision. Mrs. Hutchins' father testified that it was her habit to play her car radio, but at a low volume. The foregoing evidence demonstrates a reasonable likelihood that the position of the volume control remained un-

changed from the time of the accident until the officer's inspection of the car two days later. The bare possibility that the position of the knob may have been disturbed by the activities of rescue personnel is a circumstance bearing upon the weight, rather than the admissibility, of the evidence. The admission of the evidence was neither error nor an abuse of discretion.

After careful consideration of the assignments of error brought forward by Southern and by plaintiffs, we conclude that all parties received a fair trial free of prejudicial error.

No error.

Judges WELLS and EAGLES concur.